(15 App. Div. 251.)

### BEARDSLEY v. NEW YORK, L. E. & W. R. CO. et al.

(Supreme Court, Appellate Division, Third Department.   March 3, 1897.)

1. RAILROADS—REGULATION OF FARES—REPEAL OF STATUTES.
    Laws 1890, c. 565, § 37, providing that "every" railroad company "may" collect certain rates of fare, repeals a provision of the charter of a railroad company (Laws 1832, c. 224, § 14), authorizing it to fix its own rates, since the intent of the legislature was to establish a uniform rule as to railroad fares.  40 N. Y. Supp. 1077, affirmed.

2. CONSTITUTIONAL LAW—INTERSTATE COMMERCE—REGULATION OF RAILROAD FARES.
    Laws 1895, c. 1027, § 1, requiring railroads operating "in this state" to issue, at a certain rate, mileage books entitling the holder "to travel one thousand miles on the lines of such railroad," is intended to make such mileage books good only for passage between points in the state, and therefore does not, as regards railroads extending beyond the state, interfere with interstate commerce.

3. RAILROADS—REASONABLE RATES—PLEADING.
    The contention that the rate at which railroads are required to issue mileage books, under Laws 1895, c. 1027, § 1, is unreasonable is waived, in an action for the penalty for refusal to issue a mileage book, by failure to plead such unreasonableness.

4. SAME—INCONVENIENT REGULATIONS.
    It is no objection to Laws 1895, c. 1027, § 1, requiring railroads to issue mileage books to any person applying therefor, that the use of such books is inconvenient to the railroad company, the court having no concern with the utility of valid enactments.

5. CONSTITUTIONAL LAW—IMPAIRING OBLIGATION OF CONTRACT.
    Laws 1890, c. 565, § 37, regulating railroad fares, does not impair the obligation of the contract contained in the charter of a railroad company (Laws 1832, c. 224), authorizing the company to fix its own rates, but providing that the legislature might alter, modify, or repeal the charter at any time; Const. 1846, art. 8, § 1, providing that all acts creating corporations may be altered or repealed.

Appeal from special term, Chemung county.

Action by Albert H. Beardsley against the New York, Lake Erie & Western Railroad Company and John G. McCullough and another, receivers.   From an interlocutory judgment overruling a demurrer to the complaint (40 N. Y. Supp. 1077), and from a judgment entered on a decision of the trial judge in favor of plaintiff, a jury being waived, defendants appeal.   Affirmed.

The action is brought to recover a penalty of $50 for a violation of section 1, c. 1027, Laws 1895, which is as follows:
"Section 1. Every railroad corporation operating a railroad in this state, the line or lines of which are more than one hundred miles in length, and which is authorized by law to charge a maximum fare of more than two cents per mile and not more than three cents per mile, shall issue mileage books entitling the holder thereof to travel one thousand miles on the line or lines of such railroad, for which the corporation may charge a sum not to exceed two cents per mile.   Any railroad corporation which shall refuse to issue a mileage book as provided by this section, or, in violation thereof, to accept such mileage book for transportation, shall forfeit fifty dollars, to be recovered by the party to which such refusal is made; but no action can be maintained therefor unless commenced within one year after the cause of action accrued."

Argued before LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

Frederic B. Jennings and David C. Robinson, for appellants.
Herendeen & Mandeville, for respondent.

MERWIN, J.    1. It is claimed on the part of the defendants that the defendant corporation is authorized by law to charge more than three cents a mile, and that, therefore, it is not subject to the act in question.    It is alleged in the complaint, and admitted by the answer, "that the defendant is a railroad corporation organized and created under and by virtue of 'An act to facilitate the reorganization of railroads sold under mortgage, and providing for the formation of new companies in such cases,' passed May 11, 1874, and the act amending the same, passed June 2, 1876, being formed by the reorganization of the New York & Erie Railroad Company, incorporated under and by virtue of chapter 222 (224) of the Laws of 1832, and the Erie Railway Company, incorporated under and by virtue of chapter 160 of the Laws of 1860 and chapter 119 of the Laws of 1861."    Chapter 224 of the Laws of 1832 is entitled "An act to incorporate the New York & Erie Railroad Company," and by section 14 it is provided that "it shall be lawful for the company hereby incorporated, from time to time, to fix, regulate, and receive the tolls and charges by them to be received for transportation of property or persons" on the railroad authorized to be constructed. By section 21 it is provided that "the legislature may at any time hereafter alter, modify or repeal this act."    Under the acts of 1860 and 1861, and through a foreclosure sale of the New York & Erie Railroad, the Erie Railway Company became the possessor of all the rights, franchises, powers, and privileges of the New York & Erie Railroad Company, and these, as it may be assumed, were subsequently acquired by the defendant corporation under the reorganization act of 1874 (chapter 430, Laws 1874), as amended by chapter 446, Laws 1876.

It is conceded by the plaintiff that the defendant corporation was subject to no limitation, with regard to the rates of fare to be charged by it, prior to the passage of chapter 565 of the Laws of 1890, known as the "Railroad Law."    By section 37 of that law, as amended in 1892, it is provided that "every railroad corporation may fix and collect the following rates of fare as compensation to be paid for transporting any passenger and his baggage, not exceeding one hundred and fifty pounds in weight, for each mile or fraction of a mile."    Then follow four classes of cases wherein more than three cents a mile may be charged.    The fifth or last class is as follows: "(5) In all other cases: three cents for every such mile or fraction thereof, with a right to a minimum single fare of not less than five cents."    Then is added to the section the provision that the chapter shall not be construed to allow the New York Central Railroad Company to take more than two cents per mile wherever it is now restricted to that sum.    The plaintiff claims that the defendant corporation is within class 5, while the defendants claim that section 37 is only permissive, and does not affect the right given to their predecessor.

It is quite manifest that it was the intent of the legislature to include within the classification of section 37 every railroad corporation except the New York Central, and prescribe the only rule or rules which should govern the entire subject.    That being so, it was

applicable to the defendant corporation (Plank-Road Co. v. Allen, 16 Barb. 15; Daviess v. Fairbairn, 3 How. 636; Heckmann v. Pinkney, 81 N. Y. 211), although it operated to modify its previous right under a special act. The rule that a special act is not affected by a subsequent general act does not apply if the intent is manifest that the general act should apply to all cases, whether existing under general or special acts. McKenna v. Edmundstone, 91 N. Y. 233. It is argued that the prior right of the defendant corporation was preserved by section 181 of the act of 1890, which provided that the repeal of the existing law should not affect or impair any right accruing, accrued, or acquired under and by virtue of the law so repealed. This section was itself repealed by chapter 676 of the Laws of 1892. The provision on the same subject, being section 31 of the statutory construction law (chapter 677, Laws 1892), is limited by section 1 of the same law, which provides that the act "is applicable to every statute unless its general object, or the context of the language construed, or other provisions of law indicate that a different meaning or application was intended from that required to be given by this chapter." The defendant company is, we think, subject to the act in question.

2. It is further claimed by the defendants that the act of 1895 is in violation of the commerce clause of the federal constitution, and therefore invalid. That depends upon whether the act is to be construed as interfering with interstate commerce. The defendants operate a line of railroad running from Jersey City, in the state of New Jersey, through the states of New Jersey, Pennsylvania, and New York, and more than 100 miles in length in each of said states, and also own, control, and operate, through leases, traffic contracts, and otherwise, a continuous line of railroad from New York to Chicago, and through or into the states of New Jersey, Pennsylvania, Ohio, Indiana, and Illinois. By the act of 1832 the New York & Erie Railroad Company was given power to construct a single, double, or treble railroad or way, from the city of New York to Lake Erie, commencing at the city of New York, or at such point in its vicinity as should be most eligible and convenient therefor, and continue the same through the southern tier of counties, by way of Owego, to the shore of Lake Erie. The general rule is that a state has power to limit the amount of charges by railroad companies for the transportation of persons and property within its own jurisdiction, unless restrained by some contract in the charter, or unless what is done amounts to a regulation of foreign or interstate commerce. Stone v. Trust Co., 116 U. S. 325, 6 Sup. Ct. 334, 388, 1191; Railroad Co. v. Smith, 128 U. S. 179, 9 Sup. Ct. 47. In Wabash, St. L. & P. Ry. Co. v. People of Illinois, 118 U. S. 557, 7 Sup. Ct. 4, it was held that a statute of a state, intended to regulate, or to tax or to impose any other restriction upon, the transmission of persons or property from one state to another, is not within that class of legislation which the states may enact in the absence of legislation by congress, and that such statutes are void, even as to that part of such transmission which may be within the state. In the opinion it is said that if the statute could be construed to apply exclusively

44 N.Y.S.—12

to contracts for a carriage which begins within the state, discon-
nected from a continuous transportation through or into other states,
there would not seem to be any difficulty in holding it to be valid.
In respect to the construction in that regard, the federal court fol-
lowed the decision of the state court. And so it did in Louisville,
N. O. & T. Ry. Co. v. State of Mississippi, 133 U. S. 587, 10 Sup. Ct.
348, where the construction was in favor of the validity of the law,
although, as it would seem, it might necessarily affect interstate pas-
sengers. The act, as declared valid, required "all railroads carry-
ing passengers in this state, other than street railroads," to provide
separate accommodation for the white and colored races, and re-
quired the conductors of each train to assign passengers accordingly.
In Stone v. Trust Co., supra, it is said, at page 334, 116 U. S., and
page 347, 6 Sup. Ct.: "It is not enough to prevent the state from
acting that the road in Mississippi is used in aid of interstate com-
merce. Legislation of this kind, to be unconstitutional, must be
such as will necessarily amount to or operate as a regulation of busi-
ness without the state as well as within." "The courts must so con-
strue a statute as to bring it within the constitutional limitations,
if it is susceptible of such a construction." Sage v. City of Brooklyn,
89 N. Y. 189; People v. Terry, 108 N. Y. 1, 14 N. E. 815. The act
in question is a general one. It does not in terms interfere with the
carriage of passengers outside of the state. It may be construed as
intending to refer only to such railroads as operate within this state
a line or lines more than 100 miles in length, and to limit to such
lines the use of the mileage books therein provided for. It may be
construed to apply solely to commerce within the state, and there-
fore no violation of the federal constitution. Louisville, N. O. & T.
Ry. Co. v. State of Mississippi, supra; Attorney General v. Old Colony
R. Co., 160 Mass. 81, 35 N. E. 252. It should, we think, be so con-
strued. See Dillon v. Railroad Co., 19 Misc. Rep. 116, 43 N. Y. Supp.
320.

It is argued by the defendants that, from the extrinsic evidence
of the circumstances under which the act in question was passed,
it is apparent that there was an intention to have the mileage books
applicable to carriage on the lines of the road outside of the state.
There is no finding to this effect, and in its absence, and the ab-
sence of any expression of such intention in the law itself, we have
not, I think, any right to conclude that such was the intention. The
decision below, if it be deemed a general one without expressing the
facts found, is, as said in Amherst College v. Fitch, 151 N. Y. 282,
320, 45 N. E. 886, "the same as if there had been a general verdict
rendered by a jury, and that the same presumptions arise in its
support." It is found that the act is a valid exercise of legislative
power, and requires the defendants to furnish the plaintiff a mileage
book entitling him to travel 1,000 miles on the line or lines of the
railroad of the defendants, in trips wholly within the state. We
find no good reason for disturbing that conclusion.

3. It is further claimed that the rate fixed by the act in question
is unreasonable in its amount, and therefore invalid. It is sufficient
to say that there is no defense set up in the answer of this kind. It

is, however, alleged that the use of the mileage books would be inconvenient and impracticable, and evidence was given upon that subject. The fact, however, is not so found. The legislative rate is, at least, presumptively reasonable. Ruggles v. People of Illinois, 108 U. S. 541, 2 Sup. Ct. 832; Budd v. New York, 143 U. S. 517, 545, 12 Sup. Ct. 468. There is, aside from the interstate question, no doubt about the legislative power. People v. Boston & A. R. Co., 70 N. Y. 569; People v. Budd, 117 N. Y. 1, 25, 22 N. E. 670, 682. In the latter case it is said (page 25, 117 N. Y., and page 679, 22 N. E.): "If the power to legislate exists, the court has nothing to do with the policy or wisdom of the interference in the particular case, or with the question of the adequacy or inadequacy of the compensation authorized." In Ames v. Pacific Co., 64 Fed. 165, 172, it is said by Judge Brewer that "railroad companies cannot plead their own convenience, or the effects of competition between themselves and other companies, in restraint of the otherwise undeniable power of the state." The same view was taken in the case cited from 160 Mass., at page 81, and 35 N. E., at page 253. In Covington & C. Bridge Co. v. Commonwealth of Kentucky, 154 U. S. 204, 211, 14 Sup. Ct. 1089, it is said that under the police power "the states may also prescribe the form of all commercial contracts, as well as the terms and conditions upon which the internal trade of the state may be carried on." The legislature, under the power reserved in the act of 1832, and embodied in the constitution of 1846 (article 8, § 1), as well as in the present constitution, had the right to legislate upon the subject, without being subject to the charge of impairing the obligation of contracts. See Railroad Co. v. Miller, 132 U. S. 75, 10 Sup. Ct. 34. If section 38 of the railroad law, which imposed certain restrictions on the reduction of fares, should be deemed applicable to the defendant, there was nothing to prevent its modification by a subsequent act of the legislature. The judgment should be affirmed.

Judgment affirmed, with costs. All concur.