ALBERT L. PURDY, Respondent, *v.* ERIE RAILROAD COMPANY, Appellant.

1. MILEAGE BOOK ACT — CONSTITUTIONAL AS TO SUBSEQUENT CORPORATIONS. The Mileage Book Act (L. 1895, ch. 1027), although declared by the Supreme Court of the United States unconstitutional as to railroad corporations theretofore incorporated, is constitutional as to a railroad corporation thereafter incorporated in the state of New York, and whose franchises and property rights, so far as the record shows, have accrued subsequent to the enactment of the statute.

2. BURDENS NOT INCREASED BY L. 1896, CH. 835. The amendment to said Mileage Book Act of 1895 (L. 1896, ch. 835) did not increase the burdens of railroad corporations, and hence the amendment is constitutional in all cases where the original act would be upheld.

3. MILEAGE BOOK ACTS — NOT REGULATIONS OF INTERSTATE COM-
MERCE. Statutes, relative to mileage books, when limited to railroad
transportation wholly within the state, are a valid exercise of the power
of the state and are not regulations of interstate commerce.

4. APPEAL. The objection, that statutes invade the property rights of
a corporation in violation of the State or Federal Constitutions, is not
available in the Court of Appeals unless it has been taken below.

*Purdy* v. *Erie R. R. Co.*, 33 App. Div. 643, affirmed.

(Argued January 29, 1900 ; decided February 27, 1900.)

APPEAL from a judgment of the Appellate Division of the
Supreme Court in the fourth judicial department, entered
October 17, 1898, overruling defendant's exceptions ordered
to be heard in the first instance by the Appellate Division,
denying a motion for a new trial, and directing the entry of
a judgment in favor of plaintiff upon a verdict directed by
the court.

The nature of the action and the facts, so far as material,
are stated in the opinion.

*Adelbert Moot* and *George F. Brownell* for appellant. As
the statute in question violates the Constitution of the state
of New York, which provides : No person shall be deprived
of life, liberty or property without due process of law ; also
the Constitution of the United States, which provides : No
state shall deprive any person of life, liberty or property with-
out due process of law, nor deny to any person within its
jurisdiction the equal protection of the laws, it follows that
said statute is void, and the judgment herein has no founda-
tion on which to rest. (N. Y. Const. art. 1, § 6 ; U. S. Const.
art. 14, § 1 ; *Taylor* v. *Porter*, 4 Hill, 140 ; *Matter of Jacobs*,
98 N. Y. 98 ; *People* v. *Marx*, 99 N. Y. 377 ; *Wynehamer* v.
*People*, 13 N. Y. 378 ; *People* v. *Budd*, 117 N. Y. 1 ; *Gil-
man* v. *Tucker*, 128 N. Y. 190 ; *People ex rel.* v. *Albertson*,
55 N. Y. 50 ; *People ex rel.* v. *Otis*, 90 N. Y. 48 ; *People* v.
*Gillson*, 109 N. Y. 389.) The legislation in question does
not apply to this defendant, because of the statute incorpo-

rating it and subsequent statutes, and, therefore, judgment should have been rendered against plaintiff, not defendant. (*C., etc., B. Co.* v. *Kentucky,* 154 U. S. 204; *Reagan* v. *F. L. & T. Co.,* 154 U. S. 362; *Smyth* v. *Ames,* 169 U. S. 466; L. 1890, ch. 565, §§ 181–183.) The legislation in question amounts to a regulation of interstate commerce, and is, therefore, void within the decisions of the United States Supreme Court. (*W., etc., Ry. Co.* v. *Illinois,* 118 U. S. 557.) If the legislation in question can be construed to apply only to the line or lines in New York state, then the plaintiff should have demanded a mileage book upon the line or lines in New York state alone, and as he never demanded such a mileage book, the defendant did not subject itself to a penalty by neglecting or refusing to deliver a different mileage book to the plaintiff when the mileage book demanded by the plaintiff was one that would have been good upon any of the lines of the defendant. (*Porter* v. *D. B. Co.,* 157 Penn. St. 367.) The legislation in question contemplates an actual passenger in good faith purchasing and holding a mileage book with intent to use it, and, therefore, a party can only maintain an action for a penalty under that legislation, provided he was an actual passenger, in good faith, applying for such a mileage book with intent to use it, under the statute. (*Myers* v. *B. H. R. R. Co.,* 10 App. Div. 335.)

*Clarence A. Farnum* for respondent. The Mileage Book Act is not invalid as being in violation of article 14 of section 1 of the United States Constitution, or article 1, section 6, of the New York State Constitution, in this, that the defendant is deprived of its property without due process of law. (*Munn* v. *Illinois,* 94 U. S. 113; *Budd* v. *New York,* 143 U. S. 517; *G. R. R. & B. Co.* v. *Smith,* 128 U. S. 174; *Stone* v. *F. L. & T. Co.,* 116 U. S. 307; Cooley's Const. Lim. [6th ed.] 734–738; *Dow* v. *Biedelman,* 125 U. S. 680; *W. & L. T. Co.* v. *Croxton,* 23 L. R. A. 177; *C. & G. T. Ry. Co.* v.

*Wellman*, 143 U. S. 339; *Ryan* v. *L. & N. Terminal Co.*, 45 L. R. A. 303; *Brass* v. *North Dakota*, 153 U. S. 391; *L. & N. R. Co.* v. *Kentucky*, 161 U. S. 677.) This act does not attempt to regulate commerce between the states, and does not purport to nor could it act outside of the state of New York. (*C. & G. T. Ry. Co.* v. *Wellman*, 143 U. S. 339; *H. B. Co.* v. *Kentucky*, 166 U. S. 150; *N. Y., L. E. & W. R. R. Co.* v. *Penn.*, 158 U. S. 431; *Hopkins* v. *U. S.*, 171 U. S. 578; *Thomas* v. *Gay*, 169 U. S. 264.) The Mileage Book Acts do not deny to the defendant the equal protection of the laws. (*Haynes* v. *Missouri*, 120 U. S. 71; *Maryland* v. *Broadbelt*, 45 L. R. A. 433.) The defendant cannot urge any constitutional question in this court other than the one that the Mileage Book Act is in violation of the United States Constitution in its attempt to regulate commerce among the states. (Baylies' N. T. & App. 275; Code Civ. Pro. § 190; *Vose* v. *Cockcroft*, 44 N. Y. 415; *Delaney* v. *Brett*, 51 N. Y. 78; *Pierce* v. *S. Ry. Co.*, 171 U. S. 641; *City of Buffalo* v. *N. Y., L. E. & W. R. R. Co.*, 152 N. Y. 276; *H. P. Co.* v. *S. I. Co.*, 157 N. Y. 437, 441; *Murdock* v. *Mayor, etc.*, 87 U. S. 590; *Wilson* v. *McNamee*, 102 U. S. 572; *Matter of Houdayer*, 150 N. Y. 37; Cooley's Const. Lim. [6th ed.] 19.) The Mileage Book Act being in force at the time the defendant was incorporated, it does not lie within the power of the company to allege its invalidity. (*Town of Pierrepont* v. *Loveless*, 72 N. Y. 216; *Plumb* v. *Christie*, 103 Ga. 686; *People* v. *R. & S. R. R. Co.*, 15 Wend. 113; *Reid* v. *Town of Eatonton*, 80 Ga. 755; Cooley's Const. Lim. [6th ed.] 479; *People ex rel.* v. *Barnard*, 110 N. Y. 548; *Mayor* v. *B. & S. A. R. R. Co.*, 17 Hun, 242; *Ashley* v. *Ryan*, 153 U. S. 436; *Railroad Co.* v. *Gibbes*, 24 S. C. 60; *L. & N. R. Co.* v. *Kentucky*, 161 U. S. 677; *Bushwick* v. *Ebbets*, 3 Edw. Ch. 353.) The plaintiff was entitled to recover a penalty of fifty dollars each time he was refused a mileage book, for which an action was brought,

and he was not limited to a single recovery. (*Fisher* v. *N. Y. C. & H. R. R. R. Co.*, 46 N. Y. 644; *Casey* v. *N. Y. C. & H. R. R. R. Co.*, 49 N. Y. 675.) The motive of the plaintiff in demanding such ticket cannot relieve the defendant from performing the statutory duty imposed upon it. The penalty is imposed upon the corporation for its failure to comply with the mandate of the legislature. (*Fisher* v. *N. Y. C. & H. R. R. R. Co.*, 46 N. Y. 644; *Clinton* v. *Myers*, 46 N. Y. 511; *Phelps* v. *Nowlen*, 72 N. Y. 39; *Morris* v. *Tuthill*, 72 N. Y. 575; *Cotheal* v. *Brouwer*, 5 N. Y. 562; *Myers* v. *B. H. R. R. Co.*, 10 App. Div. 335.)

CULLEN, J. This action, similar in character to that of *Beardsley* v. *N. Y., L. E. & W. R. R. Co.*, is brought to recover penalties for the refusal of the defendant to issue mileage books, as prescribed by chapter 1027 of the Laws of 1895, as amended by chapter 835 of the Laws of 1896. The record in this case, however, differs materially from that in the *Beardsley* case, both in its facts and in the objections taken by the counsel to the right of the plaintiff to recover. The complaints (there were originally several actions which were subsequently consolidated into one) allege that the defendant is a railroad corporation organized under the laws of this state, and then set forth the various matters necessary to bring the defendant within the terms of the statute, and the details of the plaintiff's applications for mileage books and the defendant's refusal to issue them. They do not state when the defendant was incorporated. The answers to the several causes of action admitted the incorporation of the defendant and certain other allegations of the plaintiff in reference to the mileage of road operated by the defendant and its rates of fare, and put in issue the other averments of the complaint. They further set up that the defendant owned and operated a railroad extending through several states, and charge that the statute of 1896 "is unconstitutional and void, because it is in

violation of the provision of the Constitution of the United
States, which commits to Congress the sole power to regulate
commerce between the several states, and that it is unconstitu-
tional and void because it is in violation of various other pro-
visions of the Constitution of the United States, and of the
Constitution of the state of New York." On the trial of the
action the plaintiff put in evidence the certificate of the defend-
ant's incorporation, of which the record contains only the
following: " Certificate referred to shows that the Erie
Railroad corporation, defendant, was duly organized and
incorporated November 14, 1895, under the general laws of
the state of New York for the incorporation of railroads."
The earliest refusal to issue a mileage book, for which it is
sought to recover the penalty, occurred on June 26, 1896.
The defendant put in evidence a map showing the various
lines of the Erie railroad, extending through this state and
others, and " to make the description of the lines of the
defendant more certain," as was stated by the counsel in offer-
ing them, two deeds, one from Arthur H. Masten, special
master, to Charles Caster and others, and the other from Cas-
ter and others to the defendant. All the record states of these
deeds is that they were " of the New York, Lake Erie &
Western lines," and that they were delivered and recorded in
November, 1895. This is all that appears concerning the
original title to defendant's road. There is nothing to show
the defendant has succeeded to the rights or franchises of any
company antedating the enactment of the statute of 1895.
While our personal knowledge may inform us of the history
of the railroad lines operated by the defendant, to that we
cannot appeal, and we can indulge in no presumption as to
the existence of facts not appearing in the record. As the
case stands before us we have a railroad company created after
the statute of 1895, and whose franchise and property rights
must be assumed to have accrued subsequently to that time.
The question, therefore, is whether the statute of 1895, though

void as to existing railroad companies, is not constitutional and valid as to companies organized and acquiring property and franchises in the future.

That a statute, which is unconstitutional so far as it purports to operate retrospectively, may be upheld as to future cases, is settled by authority. (*People* v. *O'Neil*, 109 N. Y. 251; Cooley Const. Lim. 180.) We do not assent, however, to the broad claim of the learned counsel for the respondent that a corporation cannot object to the constitutionality of any statute enacted by the state prior to the time of its organization. Whether the proposition contended for is true or false depends on the ground on which the validity of the statute is assailed or its invalidity declared. If the state should require, or enact, that railroad companies thereafter organized must subject the management and conduct of any interstate transporation and business they may carry on, to state control, such a statute would be void as in contravention of the Constitution of the United States, which commits to Congress the regulation of interstate commerce. It is probable that there are provisions of the State Constitution, such as those regulating the administration of justice and ordained for the security of persons and property, which the legislature could not require even future corporations to waive as a condition of their charters. But the ground on which the Supreme Court of the United States in the case of *Lake Shore & M. S. Ry. Co.* v. *Smith* (173 U. S. 684) held the Mileage Book Act unconstitutional, was that it was an invasion of the property rights of the railroad company, in that it required the company to transport persons willing and able to purchase thousand-mile books at a less sum than the general or maximum rate allowed by law; in other words, that it compelled the company to surrender, as to such persons, the difference between the special rate of fare and the regular rate. This exaction was illegal, because it was without due process of law. We know of no reason, however, why a railroad company may not agree, upon sufficient con-

sideration, to surrender or transfer any specific pecuniary right. The right to contract as to property is one of the inherent rights of a citizen, of which he cannot be deprived, except as to that class of contracts which are condemned in the exercise of the police power, such as usury and the like. (*People* v. *Gillson*, 109 N. Y. 389.) The same liberty of contract exists in the grant of charters by the legislature. Therefore, a regulation as to the price of transportation, which would be an illegal exaction when sought to be imposed on existing corporations solely by legislative fiat, may, in the case of future corporations, be the mere performance of the obligation of a contract. The authority to construct and operate a railroad is not the natural right of a citizen, but a franchise proceeding from the favor or grant of the state. As a condition of such grant, the legislature might require the company to transport passengers at any prescribed rate of fare; equally, it may require that certain classes of passengers be transported at a particular rate of fare, or that any passenger, under certain circumstances and on compliance with certain requirements, be transported at such rate. In *Railroad Co.* v. *Maryland*, (21 Wall. 456) the Supreme Court of the United States said: " This unlimited right of the state to charge, or to authorize others to charge, toll, freight, or fare for transportation on its roads, canals, and railroads, arises from the simple fact that they are its own works, or constructed under its authority. It gives them being. It has a right to exact compensation for their use." So it was held that a reservation by the state to itself of one-fifth of the receipts for transportation of passengers was valid, and it was said that the state might have exacted the whole receipts. (See, also, *Ashley* v. *Ryan*, 153 U. S. 436, and *L. & N. Ry. Co.* v. *Kentucky*, 161 U. S. 677.)

The statute of 1896 was passed subsequently to the incorporation of the defendant, and if the statute increased the burden imposed on the defendant by the act of 1895, as to such additional burden it would be invalid. But a comparison

7

of the two acts shows that all the modifications of the statute
of 1895 effected by the statute of 1896 are favorable to the
railroad company. By the first act the mileage books entitled
the holder, *i. e.*, the bearer or assignee, to transportation; by
the second, the use of the book is limited to the purchaser and
to certain members of his family and employees. By the act
of 1895 there was imposed on the company the general duty
to issue mileage books; by that of 1896 the company is
required to keep such books for sale only at stations in incor-
porated villages and cities. By the earlier statute the com-
pany was practically required to accept the mileage books
from passengers on the train in lieu of tickets; by the latter
act, the mileage book can be used only in the purchase at the
ticket office of a ticket for the proposed journey. We are of
opinion, therefore, that the enactment of 1896 is constitu-
tional and valid in the same cases where the statute of 1895
would be upheld.

While we have discussed, at some length, the constitution-
ality of the statutes of 1895 and 1896 as applied to future cor-
porations, we doubt very much whether the defendant's objec-
tions and exceptions are sufficient to raise the question. So
far as the pleadings are concerned the only attack on the
validity of the statutes is that already quoted from the defend-
ant's answer. At the opening of the trial the defendant
moved to dismiss the complaint because it failed to state facts
sufficient to constitute a cause of action for a penalty. No
particular ground for the attack on the complaint is stated.
At the close of the evidence, the defendant renewed its motion
to dismiss the complaint, but the sole ground on which it
assailed the validity of the statute itself was that it consti-
tuted an interference with the regulation of interstate com-
merce, and, hence, was in violation of the Constitution of the
United States. The objection that the statute was an inva-
sion of the defendant's property rights and contravened, for
that reason, either the Constitution of the United States or
the Constitution of this state, does not anywhere appear in
the record, and the rule seems settled that such an objection,

to be available here, must have been raised in the courts below. (*Vose* v. *Cockcroft*, 44 N. Y. 415; *Delaney* v. *Brett*, 51 N. Y. 78.)

The objection that the statutes of 1895 and 1896 are regulations of interstate commerce, and, hence, in conflict with the Federal Constitution, is satisfactorily dealt with in the very clear opinion of Mr. Justice Merwin of the Appellate Division, delivered in the *Beardsley Case* (15 App. Div. 251). That such a statute, if limited in its scope to transportation wholly within the limits of the state, is a valid exercise of state authority, is settled by the decision of the Supreme Court of the United States in *Stone* v. *Farmers' Loan & Trust Co.* (116 U. S. 307) where it was said : " It (the state) may, beyond all question, by the settled rule of decision in this court, regulate freights and fares for business done exclusively within the state." This doctrine has never been overruled or limited ; on the contrary, it is fully recognized in the later cases. (*Hennington* v. *Georgia*, 163 U. S. 299 ; *W. U. Tel. Co.* v. *James*, 162 U. S. 650 ; *L. S. & M. S. R. Co.* v. *Ohio*, 173 U. S. 285.) In *Wabash, S. L. & P. Ry. Co.* v. *Illinois* (118 U. S. 557) a statute of Illinois regulating fares was held void solely on the ground that the act, as interpreted by the Supreme Court of the state, included cases of transportation partly within and partly without the state. It was there stated : " If the Illinois statute could be construed to apply exclusively to contracts for a carriage which begins and ends within the state, disconnected from a continuous transportation through or into other states, there does not seem to be any difficulty in holding it to be valid." There is nothing in the language of the statutes now before us that shows they were intended to affect any but intra-state transportation; but if their interpretation be doubtful " the courts must so construe a statute as to bring it within the constitutional limits, if it is susceptible of such construction." (*Sage* v. *City of Brooklyn*, 89 N. Y. 189 ; *People ex rel. Sinkler* v. *Terry*, 108 N. Y. 1.) Within this principle these statutes must be construed as applying to transportation wholly within the

state, and so construed they do not infringe upon the Constitution of the United States.

The judgment appealed from should be affirmed, with costs.

PARKER, Ch. J., GRAY, BARTLETT, VANN and WERNER, JJ., concur; MARTIN, J., concurs in result.

Judgment affirmed.