George T. Dodge, Appellant, *v.* George W. Cornelius, Respondent.

1. Appeal — Constitutional Question Waived, if not Raised at the Trial. The Court of Appeals will not consider the constitutionality of an act inflicting a penalty when the question was not raised at the trial as it must be deemed to have been waived.

2. Limitation of Actions — Penalty. The three years' Statute of Limitations against the right to enforce the penalty imposed by the statute (2 R. S. 64, § 41) upon a witness to a will who omits to write his address opposite to his signature does not begin to run until the death of the testator.

3. Pleading — Pendency of Another Action. No defense to an action to recover a statutory penalty is set up by an allegation in the answer that another action is pending to recover the same penalty in the name of another plaintiff, in the absence of any allegation that the latter action was pending when the present suit was begun, or that it is between the same parties. In any event the defendant stands in no peril of a double recovery as the first judgment would bar all other actions.

*Dodge* v. *Cornelius*, 40 App. Div. 18, reversed.

(Submitted April 23, 1901; decided October 4, 1901.)

Appeal from an order of the Appellate Division of the Supreme Court in the second judicial department, made April 25, 1899, reversing a judgment in favor of plaintiff entered upon a decision of the Queens County Court on trial without a jury and granting a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*James M. Seaman* for appellant. The complaint states a cause of action for a forfeiture under the statute. (2 R. S. 64, § 41.) The statute begins to run only from the time when plaintiff discovered the fact that defendant was a witness to the will of the testator, and not from the time when the witness affixed his name thereto as a witness. (Kerr on Frauds & Mistake, 310, 311; *Farnham* v. *Brooks,* 9 Pick [Mass.] 212; *Gates* v. *Andrews,* 37 N. Y. 657; *Mayne* v. *Griswold,* 3 Sandf. 463; *Taft* v. *Wright,* 47 How. Pr. 1; *Kent* v. *Kent,* 62 N. Y. 560.) It is no defense in this action that another suit was afterwards commenced, even between the same parties. (*Burrows* v. *Miller,* 5 How. Pr. 51; *Haight* v. *Holley,* 3 Wend. 258.) The answer of another suit pending must allege and show that the two actions are between the same parties. (*Kelsey* v. *Ward,* 16 Abb. 98; *Cordier* v. *Cordier,* 26 How. Pr. 187; *Goddard* v. *Benson,* 15 Abb. Pr. 91.)

*John Lyons* for respondent. Subdivision 3 of section 383 of the Code of Civil Procedure limits the time within which an action of this nature must be commenced to three years. (*Bell* v. *Dole,* 11 Johns. 173; *Strong* v. *Stebbins,* 5 Cow. 210.) In courts of law, equity will not enforce a forfeiture or penalty except when exclusively essential to do justice. (Story Eq. Pl. §§ 521, 525.) There is another action pending for the same penalty, but brought by another plaintiff. (Code Civ. Pro. § 448.)

Bartlett, J. This action is brought to recover a forfeiture under the Statute of Wills (2 R. S. [Edmonds' edition] page

64, § 41), which reads as follows : " The witnesses to any will, shall write opposite to their names their respective places of residence ; and every person who shall sign the testator's name to any will by his direction, shall write his own name as a witness to the will. Whoever shall neglect to comply with either of these provisions, shall forfeit fifty dollars, to be recovered by any person interested in the property devised or bequeathed, who will sue for the same. Such omission shall not affect the validity of any will ; nor shall any person liable to the penalty aforesaid, be excused or incapacitated on that account, from testifying respecting the execution of such will."

The complaint alleges in substance that on the twenty-second day of April, 1895, George Duryea, late a resident of Queens county, executed his last will and testament, which was duly admitted to probate in that county on the fourth day of March, 1898 ; that testator died on the fourteenth day of December, 1897, leaving him surviving among others this plaintiff, a grandchild, heir at law and legatee under the will ; that defendant was a subscribing witness to the will and omitted to write opposite his name his place of residence as by the statute in such case made and provided, whereby an action accrued to the plaintiff in the sum of fifty dollars as a forfeiture for such omission. A judgment for the sum of fifty dollars, costs and disbursements was demanded.

We are invited by members of the court, not by counsel, to declare unconstitutional this provision of the Statute of Wills which imposes a penalty upon a witness to a will for omitting to write his address opposite his signature. A majority of the court, however, are of the opinion that both upon principle and authority the determination of the trial court ought not to be affected, even if it can be, upon a ground not invoked by the defendant upon the trial.

Many times has it been said here that the constitutionality of a statute will not be passed upon until a situation is presented which makes it the duty of the court to decide it. (*Frees* v. *Ford*, 6 N. Y. 176 ; *Demarest* v. *Mayor, etc., of N. Y.*, 147 N. Y. 203, 207 ; *People ex rel. Wetmore* v. *Supervisors of N.*

Y., 3 Abb. Ct. App. Dec. 566; *In re Attorney-General*, 155 N. Y. 441.) No such situation is presented as the defendant did not make the point upon the trial, and it is a general rule that a question will not be considered that is raised for the first time in this court. (*Quinlan* v. *Welch*, 141 N. Y. 158; *Werner* v. *City of Rochester*, 149 N. Y. 563, 565; *Snider* v. v. *Snider*, 160 N. Y. 151, 155; *Purdy* v. *Erie R. R. Co.*, 162 N. Y. 42, 51.). If the question was raised in this court for the first time we ought not to consider it, but the point was not made here and we must, therefore, refuse to pass upon it on still another ground, viz., that the defendant, as was his right, waived the claim of the unconstitutionality of the act. (*Vose* v. *Cockcroft*, 44 N. Y. 415, 424; *Durand* v. *Curtis*, 57 N. Y. 1, 7; *People* v. *Fire Association of Philadelphia*, 92 N. Y. 311, 326; *Matter of Petition of N. Y., L. & W. R. R. Co.*, 98 N. Y. 447, 453; *Cowenhoven* v. *Ball*, 118 N. Y. 231, 235; *Brady* v. *Nally*, 151 N. Y. 258, 265; *Purdy* v. *Erie R. R. Co.*, 162 N. Y. 42, 50.).

In *Vose* v. *Cockroft* (*supra*) it was said that "Under these authorities it is clear that the unconstitutionality of the act under which the bond was given was capable of being waived by the obligor. By failing to raise it or to present it in any form for the consideration of the court below he waived it as effectually as he could have done by express stipulation."

In *Cowenhoven* v. *Ball* (*supra*) the court said: "In civil cases a party may stipulate away all his rights, questions of jurisdiction as well as others, and he may do this by express agreement, by acts inconsistent with the objection or by his silence and omission to present the proper points when he ought to object.

And it was held in *Purdy's Case* (*supra*) that "The objection that the statute was an invasion of the defendant's property rights and contravened for that reason either the Constitution of the United States or the Constitution of this state does not anywhere appear in the record and the rule seems settled that such an objection to be available here must have been raised in the courts below."

We are agreed that the reason assigned by the Appellate Division for a reversal of the judgment fails to support its judgment.

The answer avers in substance that the cause of action set forth in the complaint did not accrue within three years before the commencement thereof; that the commission of the alleged offense complained of by the plaintiff occurred on the twenty-second day of April, 1895, more than three years before the commencement of the action herein, and that the defendant, therefore, pleads that the alleged cause of action is barred by lapse of time. A further alleged defense sets forth as follows: " That there is now pending in the Supreme Court of the state of New York another action to recover the same forfeiture for the same alleged cause of action, in which action Anna Merritt is plaintiff against said George W. Cornelius as defendant." A dismissal of the complaint was prayed, with costs. An action by this plaintiff against the other subscribing witness to the will abides the result of this action.

At the trial the plaintiff moved for judgment on the pleadings, which motion was granted. On appeal, the Appellate Division, with a divided court, reversed the judgment on the ground that the cause of action was barred by the Statute of Limitations.

The Code of Civil Procedure (§ 383) deals with a number of cases where the action must be brought within three years. Subdivision three thereof reads as follows: " An action upon a statute, for a penalty or forfeiture, where the action is given to the person aggrieved, or to that person and the people of the state, except where the statute imposing it prescribes a different limitation." It thus appears that the Appellate Division held that the Statute of Limitations as to a cause of action arising under this provision of the Statute of Wills begins to run from the date of the will.

This view of the case is erroneous. A last will and testament does not take effect until the death of the testator, and may be revoked by him at any time before that event. The

statute does not contemplate that an action will lie for this penalty against a subscribing witness to a will prior to the time that instrument takes effect. If this view should prevail, a testator might execute any number of wills during his lifetime, and, assuming that in each case the subscribing witness failed to observe the provisions of the statute, actions to recover this penalty might be brought as to each instrument. This, very clearly, could not have been the intention of the legislature. On the death of the testator the three years' limitation begins to run. This testator died on the fourteenth day of December, 1897, and the present action was commenced on the thirty-first day of May, 1898.

The Appellate Division rested its decision on the Statute of Limitations solely, and considered no other question.

The defense sought to be pleaded, that an action was pending to recover the same forfeiture in the name of another plaintiff, is ineffectual. It is not alleged that the action was pending when the present suit was begun, nor that it is between the same parties. In any event the defendant stands in no peril of a double recovery, as the first judgment would bar all other actions.

The order of the Appellate Division should be reversed, and the judgment of the County Court of Queens county affirmed, with costs to the appellant in all the courts.

O'Brien, J. (dissenting). The plaintiff brought two separate actions, one against each of the defendants, the subscribing witnesses to the will of his grandfather, in which he alleges that he was named as a legatee. The purpose of both actions was to recover a penalty or forfeiture under the statute which enacts that " The witnesses to any will, shall write opposite to their names their respective places of residence; * * * Whoever shall neglect to comply with either of these provisions, shall forfeit fifty dollars, to be recovered by any person interested in the property devised or bequeathed, who will sue for the same." (2 R. S. 64, § 41.)

The principal defense interposed, and the only one con-

sidered by the courts below, was the three years' Statute of Limitations. These actions were commenced May 28, 1898. The testator died December 14, 1897, and the will was executed April 22, 1895. The trial court held that the statute commenced to run from the time of the death, while the court below, on appeal, reversing the judgment for the plaintiff at the trial, held that it commenced to run at and from the date of the execution of the will. Inasmuch as the will was an ambulatory instrument and inoperative for any purpose until the death of the testator, there was no property " devised or bequeathed " in any legal sense until the death of the testator. Up to this time he was himself the only person who had any legal interest in the property, and it is quite inconceivable that the lawmakers intended to enable a person who had executed a will, which, of course, is always subject to revocation and to be supplanted by a new will, so long as the party executing the instrument is alive, to maintain actions for penalties against the witnesses to the execution. This would enable a party to collect various penalties on various wills from his neighbors who perhaps intended to do him a favor and certainly could not have intended to injure him. Nor could it have been intended that the legatees or devisees named in any will would have a right of action for the penalty during the life of the testator and while the will was subject to revocation. It could not have been intended that legatees or devisees named in a will, whether strangers or heirs, would have the right to sue for penalties before it could be known whether they were given any interest in the estate or not by the last will of the owner. It would seem to be the most reasonable construction to hold that the action is given only to those who take under the will, and hence that the cause of action does not accrue until the will becomes operative, that is, at the death of the testator. It is quite difficult to perceive the purpose or the meaning of this statute. It seems to have been upon the statute book, at least since the revision of 1830, and possibly it was before.

This suggests the question whether it is a valid enactment.

It seems to have remained a dead letter during the long period of years that has elapsed since it was enacted, and no one, so far as I am able to find, has ever attempted to enforce it until the plaintiff conceived the idea of collecting a hundred dollars from the persons who consented to become witnesses to the will of his grandfather. What power has the legislature to subject these defendants to penalties for omitting to write their respective places of residence opposite their signatures as witnesses to the will? Of course, if it had the power to subject them to penalties it had the power to declare such an omission to be a crime and punishable as such. Actions and proceedings of this character constitute a "criminal case" within the meaning of that term when used in the Constitution exempting the citizen from all compulsory self-incrimination. (*Boyd* v. *U. S.*, 116 U. S. 616.) The enactment was not an exercise of the taxing power, broad and comprehensive as that power is. It was not an exercise of the police power, unless it be that branch of it which enables the state to define and punish crimes or wrongful acts of the individual against the peace and good order of the community. The statute has no connection with any public object. No one is obliged by any law to make a will or to become a witness to a will. The person who consents to become a witness to the last will and testament of another simply does a neighborly act and favor at his request, and if the witness should omit in writing his name to designate his place of residence, there is no power that can make such an omission a crime or subject the witness to penalties or forfeitures. A judgment for a penalty may properly be enforced by imprisonment, and if the legislature has unlimited power to declare acts or omissions which in themselves are innocent or harmless to be crimes or the subject of pecuniary penalties or forfeitures, it is obvious that the liberty and the property of the citizen is largely at the mercy of the legislature. It will be seen that in the statute in question the omission is denounced as penal, whether willful or otherwise, and wholly irrespective of any consequences that may result from it. Such an omission must, from its very nature,

be an innocent one, and yet the statute subjects the witness to the penalty whether any injury or damage resulted or not, as a consequence, to any one. The statute in question inflicts the penalty without regard to any motive on the part of the witness in omitting to designate his place of residence, or of the consequences of the omission, whether injurious or otherwise. If the legislature can make such an omission penal, it can visit with the same consequences the same omission in any private contract which he signs as a party or a witness. There must be some limit to the power of the legislature to enact laws subjecting the citizen to penalties for such acts or omissions, and so this court has said. (*People* v. *Gillson,* 109 N. Y. 389, 406.) No mere act or omission in such a purely private affair can be made a crime or visited with a penalty or forfeiture without conflicting with the fundamental principles or maxims that secure to the citizen his liberty and property and freedom from all unnecessary restraint or vexatious exactions by governmental power. The state can regulate the conduct of the individual in all matters that concern the public interest or the public welfare, and may enforce the performance of any duty which he owes to his neighbors or to society, but all his private acts, or even his mistakes, cannot be made the subject of regulation by law. In the social and business life of the community there is a vast field into which the lawmaker, as such, cannot enter. If the citizen, at the request of his neighbor, consents to become a witness to a will, a deed or any other private contract or instrument, and should, through ignorance of the law, mistake or otherwise, omit to add to his signature his place of residence, there is no power in the state to make such an omission a crime or to visit it with a penalty or forfeiture. The power of the state to forbid certain acts of the individual or to enjoin duties that he may not omit and to enforce its will in that regard by appropriate penalties is very broad and comprehensive, and it is difficult if not impossible to define its exact limit, but that there is and must be a limit, even to that power, under our Constitution and system of government, no one can doubt.

This court has had frequent occasion to deal with the general question, but since no one but the plaintiff has yet, so far as we know, attempted to collect a penalty under the statute in question the precise point now before us has not been decided. The power of the legislature, however, to denounce as penal or criminal acts or omissions of the citizen which in themselves are perfectly innocent and harmless has been often discussed, and the principles decided are a safe guide to follow in the solution of the question involved in this appeal. . (*Bertholf* v. *O'Reilly*, 74 N. Y. 509; *People* v. *Marx*, 99 N. Y. 377; *In re Jacobs*, 98 N. Y. 98; *People* v. *Gillson, supra; People ex rel. Rodgers* v. *Coler*, 166 N. Y. 1; *People ex rel. Tyroler* v. *Warden, etc.*, 157 N. Y. 116; Cooley's Cons. Limitations [3d ed.], 174, 177.)

The principles upon which these cases rest are wholly irreconcilable with the right or power of the legislature to enact a penal statute which attempts to enable the plaintiff to take $50 and more than that in costs from each of the defendants for no other reason than their innocent omission to add their respective places of residence to their signatures as subscribing witnesses to his grandfather's will, an act which, of course, they consented to perform and could perform only at his request, and which they were not obliged to perform at all. Therefore, whatever the law may be with respect to the time when the Statute of Limitations begins to run, we do not consider that question important since we think there was no power in the legislature under the Constitution to give the plaintiff a cause of action against the defendants for the penalty prescribed. It was an attempt through a penal statute to transfer to the plaintiff the money of the defendants and thus to deprive them of their property by a legislative edict without compensation and without due process of law. In justice to the legislature it ought to be observed that this statute was enacted at an early day, before our present Constitution was adopted and when the limits of the legislative power had not been as clearly and accurately defined by the courts as in our day. It has remained dormant until called

into action by the plaintiff in this case. But for the fact that during the long period of its existence as part of the statute law of the state it has remained a useless and harmless enactment there is but little doubt that it would have been repealed or declared inoperative by the courts as a law that contained only the possibilities of mischief, since it enabled men to harass their neighbors with useless and groundless litigation.

It may not be amiss to notice some of the views put forth in defense of the recovery in these cases and the validity of the statute upon which it rests.

It is said in the first place that the cases cited have no application to this case. In all of them the court dealt with the power of the legislature to forbid certain acts and doings of the citizen and to declare these acts to be crimes or the subject of civil penalties. That is the very question presented by this statute. The statute in each of the cases cited denounced affirmative acts as penal, while in this case what is denounced and sought to be punished is a mere omission. In those cases the law had some apparent relation to public interests, while in this case the statute deals only with a purely private transaction in which the public have no interest whatever any more than it has in the execution of a private contract. In those cases the argument in support of the validity of the statute was much more potent and persuasive than anything urged in support of the statute in question. Thus, in the *Gillson Case* (*supra*) the statute made it a penal offense for a person to sell articles of food upon an inducement to the purchaser that a gift or prize would accompany the sale. In the *Jacobs Case* (*supra*) the statute made it a penal offense to manufacture cigars in tenement houses. In the *Marx Case* (*supra*) the statute made it penal to sell oleomargarine. This was in pursuance of a policy to protect the dairy interests of the state. In the case against the *Warden* (*supra*) the statute forbade certain persons from selling passage tickets on railroads and vessels; and so in all the cases cited, and many more that might be, the court considered and denied the power of the

legislature to denounce as penal offenses, not mere omissions in purely private transactions, as here, but affirmative acts that were claimed with at least some show of reason to be detrimental to the public interests. In principle these cases, therefore, are directly in point in a case where the statute empowers one man to sue another for a penalty based upon no other ground than a mere omission of the latter, when signing his name as a witness to a private document, to indicate his place of residence. If the legislature was without power to declare the acts involved in those cases to be penal offenses, where did it get the power to declare the omission in this case a penal offense?

But it is said that the statute in question is founded on a wise public policy. That argument was made in all the cases cited and with much more force and pertinence than is possible here, and yet it did not save the statute from condemnation. Public policy is a term vague enough to confuse discussion, but rarely clarifies an argument. The courts have sometimes found it necessary to define what it is and where it is to be found. There is no such thing in law as public policy beyond what is to be found in the Constitution and laws of the state. (*Girard Will Case*, 43 U. S. [2 How.] 197; *Hollis v. Drew Theo. Sem.*, 95 N. Y. 166, 172; *Cross v. U. S. Trust Co.*, 131 N. Y. 330, 344.) The term is often used in a vague and inaccurate sense to express some imaginary reason for holding an invalid law valid.

It is also said that the statute is hoary with age and for that reason should be respected. It is certainly over seventy years old, but it seems that the plaintiff is the only person in this long period of time that has put it to any use, though of course it has been repeatedly disregarded every year since its enactment. A law that has remained so long dormant on the statute book cannot be said to be very useful, or to be founded on any wise public policy. If the plaintiff's recovery in this case is to be upheld the statute may be useful in the future to entrap the unwary and as an instrument whereby a litigant may be enabled to extort money from his neighbors.

Finally, it is said that the validity of the statute was not raised below by pleading or otherwise. The answer to that is that when a party sues for a penalty given by statute he necessarily brings before the court the validity of the statute. The plaintiff having recovered judgment the court necessarily decided that the statute was valid. It involves the question of power and jurisdiction, and may be raised at any time and in all cases. It is not necessary in such cases for the defendant to plead the Constitution in his answer. This court, at least, will take judicial notice of that instrument.

Moreover, it should be observed that after the submission of the case here, counsel on both sides were requested by the court to submit supplemental briefs on the question of the constitutional validity of the statute and briefs were filed on that question in response to such request. Having invited counsel to discuss the question, and counsel having responded to the request, the suggestion now that the question was not raised, or in the case at all, is, to put it mildly, a somewhat remarkable conclusion.

The order should be affirmed, with costs, and judgment absolute ordered for the defendant in each case.

PARKER, Ch. J., MARTIN and VANN, JJ., concur with BARTLETT, J.; LANDON, J., concurs with O'BRIEN, J.; CULLEN, J., not sitting.

Ordered accordingly.