Talbot, J.
The defendant has been indicted for violation of subdivision P of section 30 of the Liquor Tax Law, it being alleged that as the result of a vote duly had in the city of Glover sville on the 16th and 17th days of April, 1918, the possession of liquors in said city became unlawful, and that on or about May 2, 1919, the defendant did knowingly and unlawfully have liquors in his possession in that city, such possession not being permitted under any of the exceptions specified in the statute. The defendant by his demurrer attacks the constitutionality of the act and alleges that the same is void for attempting to take or destroy private property without compensation. It is urged with much force that, granting the power of the legislature to enact such legislation having reference to property acquired subsequent to the law, it is without power to thus destroy the most substantial rights in property acquired before that time; and that inasmuch as the statute does not discriminate but applies to both classes of such property equally, it is totally void and unenforcible.
In Wynehamer v. People, 13 N. Y. 378, the Court of Appeals had under consideration an act for the prevention of intemperance, the prohibitive provisions of *338 which were, quite similar to those of the present law. In that case the court laid down these principles:
(1) The provisions of the act to prevent intemperance (Laws of 1855, chap. 231) substantially destroy the property in intoxicating liquors owned and possessed by persons within the state, when the act took effect.
(2) In its application to such liquors so owned and possessed, the act violates the provision of the state constitution which declares that no person shall be deprived of life, liberty or property without due process of law.
(3) It seems, that had the act by its terms been applicable only to liquors imported or manufactured after it took effect, it would not have been in conflict with the constitutional provision above mentioned.
(4) But as no discrimination is made by its provisions between liquor owned when it took effect and that which might afterwards be manufactured or imported, and they are made operative on both, the act is unconstitutional and void.
If the principles of judicial interpretation and decision, and the relative weight of individual right and that public sovereignty known as the police power, had remained the same throughout the years since the Wynehamer case was decided, it would seem that the demurrer must be sustained.
But as early as 1875, the same court which decided the Wynehamer case distinguished that authority and laid down the rule that the legislature has power to prohibit the having in possession of game birds after a specified date although killed at a time when the killing was not prohibited, or brought from another state where there was no such prohibition (Phelps v. Racey, 60 N. Y. 10); and this position has been adhered to both by the state and Federal courts of last resort. People v. Bootman, 180 N. Y. 1, 9; People ex rel. Hill *339 v. Hesterberg, 184 id. 126; affd., 211 U. S. 31. It maybe noted in passing that while the Wynehamer case was distinguished in the Bacey case on the ground that the property involved in the latter decision was acquired after the passage of the prohibitory act, no mention of this element is made in the Hesterberg Case, supra.
Lawton v. Steele, 119 N. Y. 226; affd., 152 U. S. 133, is also instructive as showing the progress of judicial decision away from the strict limitations of the Wynehamer case. In the Lawton case the court had under consideration an act of the legislature, passed in 1883, to regulate and control the right of fishing in the public waters of the state and which declared: “Any net found * * * in or upon any of the waters of this state, or upon the shores or islands in any waters in this state, in violation of any existing or hereafter enacted statutes or laws for the protection of fish ” to be a nuisance, authorized its summary abatement and destruction by any person, and made it the duty of every fish protector and constable “ to seize and remove and forthwith destroy the same.” It was strenuously contended that the provision authorizing the destruction of the nets, being a forfeiture and destruction of property without compensation, was unconstitutional, and particularly as the act was broad enough so that it authorized in terms the destruction of nets not actually set in waters, but which might be found on lands adjacent thereto. But the Court of Appeals held that having the undoubted power to regulate and control the public fishing in the waters of the state the legislature might make the setting of nets for that purpose a public nuisance, with consequent forfeiture of the property employed in such prohibited acts; and this doctrine was upheld on appeal to the United States Supreme Court.
*340 Turning now to eases where the property involved was intoxicating liquors, we find a like progression of judicial opinion. In Mugler v. Kansas, 123 U. S. 623, the court dealt with an extremely drastic statute. The act in question not only prohibited, under heavy penalties, the manufacture and sale of any intoxicating liquors within the state of Kansas, but further declared all places where such manufacture or sale was carried on to be public nuisance, and provided for their abatement. Mugler was indicted on two charges: one of selling, the other of manufacturing, in violation of the act. Although the single sale proved against him was of beer manufactured before the enactment of the law, he was convicted under both indictments, and the conviction was sustained. In the course of the opinion Justice Harlan quotes approvingly from the License Cases, 5 How. (U. S.) 504, as follows: “ The true question presented by these cases, and one which I am not disposed to evade, is whether the States have a right to prohibit the sale and consumption of an article of commerce which they believe to be pernicious in its effects, and the cause of disease, pauperism, and crime. * * * Without attempting to define what are the peculiar subjects or limits of this power, it may safely be affirmed, that every law for the restraint and punishment of crime, for the preservation of the public peace, health and morals must come within this category. * * * It is not necessary, for the sake of justifying the state legislation now under consideration, to array the appalling statistics of misery, pauperism, and crime, which have their origin in the use or abuse of ardent spirits. The police power, which is exclusively in the States, is alone competent to the correction of these great evils, and all measures of restraint or prohibition neces *341 sary to effect the purpose are within the scope of that authority. ’ ’
In Purity Extract & Tonic Co. v. Lynch, 226 U. S. 192, 201, it was conceded that the beverage manufactured by plaintiff was ninety and forty-five one-hundredths per cent pure water, the remaining nine and fifty-five one-hundredths per cent being solids derived from cereals; that it contained five and seventy-three one-hundredths per cent of malt, no alcohol or saccharine matter, and was not intoxicating. The case arose in Mississippi, a statute of which state forbade the sale of malt liquors. It was objected that this law, as applied to the beverage in question, conflicted with the Fourteenth Amendment. But the court, Justice Hughes writing, held unanimously, “ That the State, in the exercise of its police power may prohibit the selling of intoxicating liquors is undoubted. (Bartemeyer v. Iowa, 18 Wall. 129; Boston Beer Co. v. Massachusetts, 97 U. S. 25; Mugler v. Kansas, 123 U. S. 623; Kidd v. Pearson, 128 U. S. 1; Crowley v. Christensen, 137 U. S. 86.) It is also well established that, when a State exerting its recognized authority undertakes to suppress what it is free to regard as a public evil, it may adopt such measures having reasonable relation to that end as it may deem necessary in order to make its action effective. It does not follow that because a transaction, separately considered is innocuous it may not be included in a prohibition the scope of which is regarded as essential in the legislative judgment to accomplish a purpose within the admitted power of the Government. (Booth v. Illinois, 184 U. S. 425; Otis v. Parker, 187 U. S. 606; Ah Sin v. Wittman, 198 U. S. 500, 504; New York ex rel. Silz v. Hesterberg, 211 U. S. 31; Murphy v. California, 225 U. S. 623.) With the wisdom of the exercise of that judgment the court has no concern; and unless it *342 clearly appears that the enactment has no substantial relation to a proper purpose, it cannot be said that the limit of legislative power has been transcended. To hold otherwise would be to substitute judicial opinion of expediency for the will of the legislature, a notion foreign to our constitutional system.”
In Crane v. Campbell, 245 U. S. 304, plaintiff was arrested upon the charge of having in his possession a bottle of whiskey for his own use and benefit and not for the purpose of gi\ing away or selling the same to any person. A statute of that state (Idaho) declared unlawful the possession of any intoxicating liquors, unless under a permit authorized by the act. Claiming that the statute violated the Fourteenth Amendment, plaintiff sued out a writ of habeas corpus, but was defeated. On appeal to the Supreme Court of the United States this decision was unanimously affirmed. In the course of Justice McReynolds, opinion it was then said:
“ The question presented for our determination is whether the Idaho statute, in so far as it undertakes to render criminal the mere possession of whiskey for personal use, conflicts with that portion of the Fourteenth Amendment which declares: ‘ No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property without due process of law.’ Its validity under the state constitution is not open for our consideration; with its wisdom this court is not directly concerned.
“ It must now be regarded as settled that, on account of their well-known noxious qualities and the extraordinary evils shown by experience commonly to be consequent upon their use, a State has power absolutely *343 to prohibit manufacture, gift, purchase, sale, or transportation of intoxicating liquors within its borders without violating the guaranties of the Fourteenth Amendment. (Citing authorities.)
“As the State has the power above indicated to prohibit, it may adopt such measures as are reasonably appropriate or needful to render exercise of that power effective. (Citing authorities.) And, considering the notorious difficulties always attendant upon efforts to suppress traffic in liquors, we are unable to say that the challenged inhibition of their possession was arbitrary and unreasonable or without proper relation to the legitimate legislative purpose.
“We further think it clearly follows from our numerous decisions upholding prohibition legislation that the right to hold intoxicating liquors for personal use is not one of those fundamental privileges of a citizen of the United States which no State may abridge. A contrary view would be incompatible with the undoubted power to prevent manufacture, gift, sale, purchase or transportation of such articles,— the only feasible ways of getting them. An assured right of possession would necessarily imply some adequate method to obtain not subject to destruction at the will of the State.”
In Barbour v. State of Georgia, 249 U. S. 454; Rupert v. Caffey, U. S. Adv. Ops. 1919-20, 138; and in Hamilton v. Kentucky D. & W. Co., 251 U. S. 146, the question of the effect of prohibitory legislation upon liquor acquired before the enactment of the law was raised. In the Barbour case Justice Brandeis, adverting to the decision in Crane v. Campbell, supra, stated that it did not there appear when the liquor was purchased. In the Hamilton case the same justice again remarked upon the fact that “ the question whether an absolute prohibition of sale could be applied by a *344 state to liquor acquired before the enactment of the prohibitory law has been raised by this court, but not answered, because unnecessary to a decision,” citing numerous cases, including Barbour v. State of Georgia, supra. He then continues as follows: “ But no reason appears why a state statute, which postpones its effective date long enough to enable those engaged in the business to dispose of stocks on hand at the date of its enactment, should be obnoxious to the Fourteenth Amendment; or why such a federal law should be obnoxious to the Fifth Amendment. We cannot say that seven months and nine days was not a reasonable time within which to dispose of all liquors in bonded warehouses on November 21, 1918.”
It would seem that this, the latest utterance from the ultimate tribunal of constitutional interpretation that has come to my attention, makes reasonably clear the attitude of that court towards the validity of the legislation here challenged.
But whatever may be finally held as to the effect of the statute upon liquor'acquired before its enactment, and even if as suggested in People v. Willi, 109 Misc. Rep. 79, 95, the law may operate only upon liquors subsequently acquired, it is not for that reason to be held unconstitutional. In Dollar Co. v. Canadian C. & F. Co., 220 N. Y. 270, 278, the opinion quotes from Judge Cooley as follows: “A legislative act may be entirely valid as to some classes of cases, and clearly void as to others. A general law for the punishment of offenses, which should endeavor to reach, by its retroactive operation, acts before committed, as well as to prescribe a rule of conduct for the citizen in the future, would be void as far as it was retrospective; but such invalidity would not affect the operation of the law in regard to the cases which were within the legislative control. A law might be void as violating the obliga *345 tion of existing contracts, but valid as to all contracts which should be entered into subsequent to its passage, and which therefore would have no legal force except such as the law itself would allow. In any such case the unconstitutional law must operate as far as it can. * * * If there are any exceptions to this rule, they must be of cases only where it is evident, from a contemplation of the statute and of the purpose to be accomplished by it, that it would not have been passed at all, except as an entirety, and that the general purpose of the legislature will be defeated if it shall be held valid as to some cases and void as to others. ’ ’
Judge Hiscock then proceeds: “And this rule has been upheld in the cases of statutes consisting like the present one of a single undivided provision by the following authorities: Supervisors v. Stanley (105 U. S. 305); Commonwealth of Massachusetts v. Gagne (153 Mass. 205); Murphy v. Wheatley (100 Md. 358); Norman v. Boaz (85 Ky. 557); McCullough v. Virginia (172 U. S. 102); Commonwealth v. Kimball (24 Pick. [Mass.] 359, 362); Purdy v. Erie R. R. Co. (162 N. Y. 42, 47, 48); People v. O’Neil (109 N. Y. 251, 261, 262); Tiernan v. Rinker (102 U. S. 123, 127); Packet Co. v. Keokuk (95 U. S. 80).” To same effect see New York C. & H. R. R. R. Co. v. Williams, 199 N. Y. 108; Lawton v. Steele, 119 id. 226, 241; affd., 152 U. S. 226.
In People v. Blanchard, 105 Misc. Rep. 401, the Supreme Court at Special Term overruled a demurrer based upon the same grounds here urged. While propriety would require this court to follow the decision of a superior tribunal, the interest and importance of the question involved have led to the examination above shown. If the purport of the foregoing authorities has been correctly apprehended, it follows that the demurrer must be overruled.
Demurrer overruled.