125 U.S. 530 (1888)
WESTERN UNION TELEGRAPH COMPANY
v.
THE ATTORNEY GENERAL OF THE COMMONWEALTH OF MASSACHUSETTS.
No. 1325.
Supreme Court of United States.
Argued February 15, 1888.
Decided March 19, 1888.
APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MASSACHUSETTS.
*543 Mr. George S. Hale, (with whom were Mr. Charles W. Wells and Mr. Willard Brown on the brief).
Mr. Andrew J. Waterman, Attorney General of the Commonwealth of Massachusetts, and Mr. Henry C. Bliss, Assistant Attorney General of that State, cited.
*545 MR. JUSTICE MILLER delivered the opinion of the court.
This is a writ of error to the Circuit Court of the United States for the District of Massachusetts.
The action was commenced in the Supreme Judicial Court of Massachusetts, sitting in equity, by an information on behalf of the Commonwealth, by its Attorney General, at the relation of the treasurer thereof, Alanson W. Beard. It was afterwards removed, upon motion of the defendant, the Western Union Telegraph Company, into the Circuit Court of the United States. The object of the information was to enforce the collection of a tax levied by the proper authorities of the State upon the telegraph company, and to enjoin it from the further operation of its telegraph lines within the territorial limits of the Commonwealth until that tax was paid.
The defendant company is a corporation organized under the laws of the State of New York, having its capital stock divided into shares. The tax assessed by the treasurer of the Commonwealth of Massachusetts was based upon an estimate of $750,952 as the taxable value of the shares of the corporation apportioned to that State, the rate of taxation having *546 been determined for that year, 1885, at $14.14 for and upon each $1000 of valuation. The mode by which this taxable valuation was arrived at was this: The treasurer ascertained from the officers of the telegraph company that the valuation of its entire capital stock was $47,500,000, from which were deducted the credits proper to be allowed in determining the assessable value, leaving $38,713,924 as the total valuation of said stock liable to taxation. It was then ascertained that the total number of miles of line of said corporation in all the States and Territories of this country was 146,052.60, of which 143,219.55 were without the limits of the Commonwealth of Massachusetts, leaving 2833.05 miles within its boundaries. Taking these figures, the treasurer of the State assessed the value of that portion of the capital stock of this company which, under this calculation, would fall within the Commonwealth of Massachusetts, at the sum of $750,952. The amount thus arrived at, at the rate of $14.14 upon each $1000 of valuation, produced the sum of $10,618.46 as the amount of the tax claimed to be due and payable to the treasurer of said Commonwealth by that corporation. This sum was demanded of the telegraph company, but it refused to pay the same.
The answer of the defendant corporation set up that of its 2833.05 miles of line within the State of Massachusetts more than 2334.55 miles were over, under, or across post-roads, made such by the United States, leaving only 498.50 miles not over or along such post-roads, on which the company offered to pay the proportion of the tax assessed according to mileage by the state authorities.
The main ground on which the telegraph company resisted the payment of the tax alleged to be due, and on which probably the case was removed from the state court into the Circuit Court of the United States, is that it is a violation of the rights conferred on the company by the act of July 24, 1866, now Title LXV, §§ 5263 to 5269 of the Revised Statutes. The defendant alleges that it had accepted the provisions of that law, and filed a notification of such acceptance with the Postmaster General of the United States June 8, 1867. The argument is, therefore, that by virtue of § 5263 the company has a *547 right to exercise its functions of telegraphing over so much of its lines as is connected with the military and post-roads of the United States which have been declared to be such by law without being subject to taxation therefor by the state authorities. That section reads as follows:
"SEC. 5263. Any telegraph company now organized, or which may hereafter be organized under the laws of any State, shall have the right to construct, maintain, and operate lines of telegraph through and over any portion of the public domain of the United States, over and along any of the military or post-roads of the United States which have been or may hereafter be declared such by law, and over, under, or across the navigable streams or waters of the United States; but such lines of telegraph shall be so constructed and maintained as not to obstruct the navigation of such streams and waters, or interfere with the ordinary travel on such military or post-roads."
It is urged that this section, upon its acceptance by this corporation or any of like character, confers a right to do the business of telegraphing which is transacted over the lines so constructed over or along such post-roads, without liability to taxation by the State. The argument is very much pressed that it is a tax upon the franchise of the company, which franchise being derived from the United States by virtue of the statute above recited cannot be taxed by a State, and counsel for appellant occasionally speak of the tax authorized by the law of Massachusetts upon this as well as all other corporations doing business within its territory, whether organized under its laws or not, as a tax upon their franchises. But by whatever name it may be called, as described in the laws of Massachusetts, it is essentially an excise upon the capital of the corporation. The laws of that Commonwealth attempt to ascertain the just amount which any corporation engaged in business within its limits shall pay as a contribution to the support of its government upon the amount and value of the capital so employed by it therein.
The telegraph company, which is the defendant here, derived its franchise to be a corporation and to exercise the function *548 of telegraphing from the State of New York. It owes its existence, its capacity to contract, its right to sue and be sued, and to exercise the business of telegraphy, to the laws of the State under which it is organized. But the privilege of running the lines of its wires "through and over any portion of the public domain of the United States, over and along any of the military or post-roads of the United States, ... and over, under, or across the navigable streams or waters of the United States," is granted to it by the act of Congress. This, however, is merely a permissive statute, and there is no expression in it which implies that this permission to extend its lines along roads not built or owned by the United States, or over and under navigable streams, or over bridges not built or owned by the Federal government, carries with it any exemption from the ordinary burdens of taxation.
While the State could not interfere by any specific statute to prevent a corporation from placing its lines along these post-roads, or stop the use of them after they were placed there, nevertheless the company receiving the benefit of the laws of the State for the protection of its property and its rights is liable to be taxed upon its real or personal property as any other person would be. It never could have been intended by the Congress of the United States, in conferring upon a corporation of one State the authority to enter the territory of any other State and erect its poles and lines therein, to establish the proposition that such a company owed no obedience to the laws of the State into which it thus entered, and was under no obligation to pay its fair proportion of the taxes necessary to its support.
In the case of Telegraph Company v. Texas, 105 U.S. 460, this question was very fully considered, and while a tax imposed upon every telegram passing over its lines, whether entirely within the State or coming from without its limits, or going from the State out of it, was held to be void so far as related to messages passing through more than one State, as an interference with or a regulation of commerce and with the act of Congress we have just been considering, it was distinctly pointed out that if it could be ascertained what telegrams *549 were confined wholly within the State a tax on those might be imposed by it.
In that case the Chief Justice, delivering the opinion of the court, said:
"The Western Union Telegraph Company having accepted the restrictions and obligations of this provision by Congress, occupies in Texas the position of an instrument of foreign and interstate commerce, and of a government agent for the transmission of messages on public business. Its property in the State is subject to taxation the same as other property, and it may undoubtedly be taxed in a proper way on account of its occupation and its business. The precise question now presented is whether the power to tax its occupation can be exercised by placing a specific tax on each message sent out of the State, or sent by public officers on the business of the United States." pp. 464, 465.
This authority of the government gives to this telegraph company, as well as to all others of a similar character who accept its provisions, the right to run their lines over the roads and bridges which have been declared to be post-roads of the United States. If the principle now contended for be sound every railroad in the country should be exempt from taxation because they have all been declared to be post-roads; and the same reasoning would apply with equal force to every bridge and navigable stream throughout the land. And if they were not exempt from the burden of taxation simply because they were post-roads, they would be so relieved whenever a telegraph company chose to make use of one of these roads or bridges along or over which to run its lines. It was to provide against the recognition of such a principle that this court, in the case above cited, while holding that telegrams themselves coming from without a State or sent out of it as a part of their conveyance could not be taxed by the State specifically, nevertheless used the language that "its property in the State is subject to taxation the same as other property, and it may undoubtedly be taxed in a proper way on account of its occupation and its business."
A still stronger case in the same direction is that of Railroad *550 Company v. Peniston, 18 Wall. 5. The plaintiff in that action, the Union Pacific Railroad Company, was incorporated under a law of the United States. The State of Nebraska, under a revenue law passed by its legislature, undertook to lay a tax upon the property of that company which was used or embraced within the limits of its territory, upon a valuation of $16,000 per mile. The property thus rated and taxed consisted of its road-bed, depots, stations, telegraph poles, wires, bridges, etc. It will be here observed that a part of the valuation on which this tax was levied was made up of the telegraph poles and wires belonging to the company.
The argument was pressed in that case that the railroad company held its franchises from the government of the United States, and that its property could not be taxed by the State, but this court held otherwise, and in the opinion used this language:
"It is often a difficult question whether a tax imposed by a State does in fact invade the domain of the general government, or interfere with its operations to such an extent, or in such a manner, as to render it unwarranted. It cannot be that a state tax which remotely affects the efficient exercise of a Federal power is for that reason alone inhibited by the Constitution. To hold that would be to deny to the States all power to tax persons or property. Every tax levied by a state withdraws from the reach of Federal taxation a portion of the property from which it is taken, and to that extent diminishes the subject upon which Federal taxes may be laid. The States are and they must ever be, co-existent with the national government. Neither may destroy the other. Hence the Federal Constitution must receive a practical construction. Its limitations and its implied prohibitions must not be extended so far as to destroy the necessary powers of the States, or prevent their efficient exercise." pp. 30, 31.
The case of Thomson v. Pacific Railroad Co., 9 Wall. 579, is then cited, where it was held that the property of that company was not exempt from state taxation, though their railroad was a part of a system of roads constructed under the authority and direction of the United States, and largely *551 for the uses and to serve the purposes of the general government. The court further said:
"A very large proportion of the property within the States is employed in execution of the powers of the government. It belongs to governmental agents, and it is not only used, but it is necessary for their agencies. United States mails, troops, and munitions of war are carried upon almost every railroad. Telegraph lines are employed in the national service. So are steamboats, horses, stage-coaches, foundries, ship-yards, and multitudes of manufacturing establishments. They are the property of natural persons or of corporations, who are agents or instruments of the general government, and they are the hands by which the objects of the government are attained. Were they exempt from liability to contribute to the revenue of the States it is manifest the state governments would be paralyzed. While it is of the utmost importance that all the powers vested by the Constitution of the United States in the general government should be preserved in full efficiency, and while recent events have called for the most unembarrassed exercise of many of those powers, it has never been decided that state taxation of such property is impliedly prohibited." p. 33.
In National Bank v. Commonwealth, 9 Wall. 353, which was a case of a tax levied upon the shares of a national bank, the same objection in regard to a tax by state authority was pressed upon the court, but this court said that the principle of exemption of Federal agencies from state taxation has a limitation growing out of the necessity upon which the principle is founded. "That limitation is, that the agencies of the Federal government are only exempted from state legislation, so far as that legislation may interfere with or impair their efficiency in performing the functions by which they are designed to serve that government. Any other rule would convert a principle founded alone in the necessity of securing to the government of the United States the means of exercising its legitimate powers into an unauthorized and unjustifiable invasion of the rights of the States... . So of the banks. They are subject to the laws of the State, and are *552 governed in their daily course of business far more by the laws of the State than of the nation. All their contracts are governed and construed by state laws. Their acquisition and transfer of property, their right to collect their debts, and their liability to be sued for debts, are all based on state law. It is only when the state law incapacitates the banks from discharging their duties to the government that it becomes unconstitutional. We do not see the remotest probability of this, in their being required to pay the tax which their stockholders owe to the State for the shares of their capital stock, when the law of the Federal government authorizes the tax." p. 362.
The ax in the present case, though nominally upon the shares of the capital stock of the company, is in effect a tax upon that organization on account of property owned and used by it in the State of Massachusetts, and the proportion of the length of its lines in that State to their entire length throughout the whole country is made the basis for ascertaining the value of that property. We do not think that such a tax is forbidden by the acceptance on the part of the telegraph company of the rights conferred by § 5263 of the Revised Statutes, or by the commerce clause of the Constitution.
It is urged against this tax that in ascertaining the value of the stock no deduction is made on account of the value of real estate and machinery situated and subject to local taxation outside of the Commonwealth of Massachusetts. The report of Examiner Fiske, to whom the matter was referred to find the facts, states that the amount of the value of said real estate outside of its jurisdiction was not clearly shown, but it did appear that the cost of land and buildings belonging to the company and entirely without that State was over three millions of dollars. In the statement of the treasurer of the company it is said that the value of real estate owned by the company within the State of Massachusetts was nothing. Since the corporation was only taxed for that proportion of its shares of capital stock which was supposed to be taxable in that State on the calculation above referred to, and since no real estate of the corporation was owned or taxed within *553 its limits, we do not see why any deduction should be made from the proportion of the capital stock which is taxed by its authorities. But if this were otherwise we do not feel called upon to defend all the items and rules by which they arrived at the taxable value on which its ratio of percentage of taxation should be assessed; and even in this case, which comes from the Circuit Court and not from that of the State, we think it should appear that the corporation is injured by some principle or rule of the law not equally applicable to other objects of taxation of like character. Since, therefore, this statute of Massachusetts is intended to govern the taxation of all corporations therein, and doing business within its territory, whether organized under its own laws or those of some other State, and since the principle is one which we cannot pronounce to be an unfair or an unjust one, we do not feel called upon to hold the tax void, because we might have adopted a different system had we been called upon to accomplish the same result.
It is very clear to us, when we consider the limited territorial extent of Massachusetts, and the proportion of the length of the lines of this company in that State to its business done therein, with its great population and business activity, that the rule adopted to ascertain the amount of the value of the capital engaged in that business within its boundaries, on which the tax should be assessed, is not unfavorable to the corporation, and that the details of the method by which this was determined have not exceeded the fair range of legislative discretion. We do not think that it follows necessarily, or as a fair argument from the facts stated in the case, that there was injustice in the assessment for taxation.
The result of these views is, that the tax assessed against the plaintiff in error is a valid tax; that the judgment of the court below, "that the sum claimed by the plaintiff (below) to be due for taxes, to wit, $10,618.46, be paid to said State by said corporation, with interest thereon," is without error, and so much of said judgment is hereby affirmed.
The decree or judgment, however, proceeds and awards an injunction against the company in the following language, *554 added to that above extracted: "and that an injunction shall be issued out of and under the seal of this court, directed to said corporation, and its officers, agents and servants, commanding them and each of them absolutely to desist and refrain from the further prosecution of the business of said corporation until said sums due to the said Commonwealth for taxes, as aforesaid, shall have been fully paid, with interest and costs, unless the said sum is paid by said defendant within thirty days from the entry hereof."
The effect of this injunction, if obeyed, is to utterly suspend the business of the telegraph company, and defeat all its operations within the State of Massachusetts. The act of Congress says that the company accepting its provisions "shall have the right to construct, maintain and operate lines of telegraph through and over any portion of the public domain of the United States, over and along any of the military or post-roads of the United States." It is found in this case that 2334.55 miles of the company's lines, out of 2833.05 on which this tax is assessed, are along and over such post-roads, and of course the injunction prohibits the operation of the defendant's telegraph over these lines, nearly all it has in the State.
If the Congress of the United States had authority to say that the company might construct and operate its telegraph over these lines, as we have repeatedly held it had, the State can have no authority to say it shall not be done. The injunction in this case, though ordered by a Circuit Court of the United States, is only granted by virtue of section 54 of chapter 13 of the Public Statutes of Massachusetts. If this statute is void, as we think it is, so far as it prescribes this injunction as a remedy to enforce the collection of its taxes by the decree of the court awarding it, the injunction is erroneous.
In holding this portion of section 54 of chapter 13 of the Massachusetts statutes to be void as applicable to this case, we do not deprive the State of the power to assess and collect the tax. If a resort to a judicial proceeding to collect it is deemed expedient, there remains to the court all the ordinary means of enforcing its judgment  executions, sequestration, and any other appropriate remedy in chancery.
*555 That part of the decree of the Circuit Court which awards the injunction is, therefore, reversed, and the case is remanded to that court for further proceedings in conformity to this opinion.
MR. JUSTICE BRADLEY was not present at the argument of this case and took no part in its decision.