CITY OF TOLEDO et al. v. WESTERN UNION TEL. CO.

(Circuit Court of Appeals, Sixth Circuit.    March 5, 1901.)

No. 933.

1. TELEGRAPHS AND TELEPHONES—MAINTENANCE OF LINE—POST ROADS—CITY STREETS—CONTROL BY CITY.

Act Cong. July 24, 1866 (Rev. St. §§ 5263–5268), provides that any telegraph company organized under the laws of any state may construct and maintain telegraph lines over any portion of the public domain, and over and along any military or post road of the United States, provided that such lines shall be so constructed and maintained as not to interfere with travel.   Act Cong. June 8, 1872 (Rev. St. § 3964), declares that all letter-carrier routes established in any city or town shall be post roads.   *Held*, that an interstate telegraph company which had accepted the provisions of the act of 1866 was not entitled to erect and maintain its lines over the streets of a city without complying with the reasonable regulations of the city for the erection and maintenance of such lines, and without procuring a permit therefor from the city.[1]

2. SAME—DISTRICT TELEGRAPH SYSTEM.

Such act was strictly limited to the business of telegraph companies as such, and hence did not authorize a telegraph company accepting the act to use the streets of a city for the installation of a district telegraph system for the purpose of the collection and delivery of telegraph messages, and the maintenance of a messenger system, fitted with call boxes for watchman, fire, burglar, and police signals, and for the employment of messenger boys to carry messages and packages, run miscellaneous errands, distribute posters, etc., within the city.

Appeal from the Circuit Court of the United States for the Western Division of the Northern District of Ohio.

The Western Union Telegraph Company, complainant, a corporation under the laws of the state of New York, authorized to do a general telegraphic business throughout the United States, on June 17, 1867, accepted the terms of the act of congress of July 24, 1866 (Rev. St. U. S. §§ 5263–5268), the first section of which provides: "That any telegraph company now organized or which may hereafter be organized, under the laws of any state in this Union, shall have the right to construct, maintain and operate lines of telegraph, through and over any portion of the public domain of the United States, over and along any of the military or post roads of the United States which have been or may hereafter be declared such by act of congress, and over, under or across the navigable streams or waters of the United States: provided, that such lines of telegraph shall be so constructed and maintained as not to obstruct the navigation of such streams and waters, or interfere with the ordinary travel on such military or post roads.   And any of said companies shall have the right to take and use from such public lands the necessary stone, timber and other materials for its posts, piers, stations and other needful uses in the construction, maintenance and operation of said lines of telegraph, and may pre-empt and use such portion of the unoccupied public lands subject to pre-emption through which its lines of telegraph may be located as may be necessary for its stations, not exceeding forty acres for each station; but such stations shall not be within fifteen miles of each other."   Subsequently, by an act approved June 8, 1872 (Rev. St. U. S. § 3964), all letter-carrier routes established in any city or town for the collection and delivering of mail matter by carriers were declared by congress to be post roads.   Soon after its acceptance of the terms of the act of congress of 1866, the complainant constructed its lines of telegraph in the city of To-

---

[1] Rights of telegraph and telephone companies to use of streets, see note to Southern Bell Telephone & Telegraph Co. v. City of Richmond, 44 C. C. A. 155.

ledo, and has since, with full acquiescence of the city, occupied its streets and alleys with its poles and wires. It has conformed to the regulations of the city from time to time by putting its wires underground where required, and removing its poles from one district to another. For several years the Western Union Telegraph Company had its messages delivered and gathered by a local company, with which it failed to make a contract to continue such service, and at some time before the commencement of this suit several persons had agreed to form another such company, to be known as the "National District Telegraph Company," with which, when formed, the Western Union Telegraph Company had agreed to make a contract for the gathering and delivering of its messages in the city of Toledo. This company was never formed, and never acquired any rights in the streets of Toledo, although the persons who contemplated forming it had call boxes made and placed in some of the offices and buildings, and advertised for business under the representation that this company was connected with the Western Union Telegraph Company. Without obtaining a franchise, the persons contemplating forming the National District Telegraph Company applied to the complainant to be allowed to install its system on the poles and in the conduits of the complainant, which, on advice of counsel, was refused. The project of forming the National District Telegraph Company was then abandoned, and the complainant purchased the boxes which bore the name and advertisement of the National District Telegraph Company, and purposed completing the system by stringing wires on its poles and in its conduits, and carrying on the business of a district telegraph company for its own service and for the general public. For this purpose, without disclosing it, the complainant applied to the superintendent of fire-alarm telegraph and city civil engineer of defendant city for permits to set poles as required by the ordinance with which it had always complied. These permits were granted under the belief that the work was for the regular and accustomed business of the complainant; but when it was found that complainant was connecting wires with the call boxes which had been put in, and installing a complete district telegraph system, the defendant, under the impression that complainant was clandestinely doing this for the National District Telegraph Company, revoked the permits, and the complainant was notified that, if it desired to do any more new work, a separate permit should be applied for, stating exactly what was required. The common council of the city then passed a resolution stating that parties styling themselves the National District Telegraph Company had, without right or authority, erected poles and fixtures, and had strung wires in and over the streets, alleys, and public places in the city, which were a hindrance to the fire department, and a menace to the safety of the lives and property of citizens, and directing the chief of police, city civil engineer, and superintendent of fire-alarm telegraph to remove all such wires, fixtures, and poles erected or constructed by the National District Telegraph Company, or by any other individual, company, or corporation, without having first complied with the laws, ordinances, and regulations governing this class of work in the city of Toledo. Thereupon this bill was filed against the city and its officers, stating in the most general terms that the defendant city threatened to cut the wires, destroy the lines, and remove the poles of the complainant, and interrupt the working of its lines, ruin its business, and incapacitate it from discharging its duties to the general public and its agency to the federal government. An order to show cause why a preliminary injunction should not be granted was made, and a preliminary restraining order was issued. On the hearing, the defendant disclaiming every intention of interfering with the lines and property of the complainant used in its usual and ordinary business, and avowing that its purpose was only to arrest the installation of the plant of the National District Telegraph Company, the preliminary injunction was denied, and the temporary restraining order vacated. W. U. Tel. Co. v. City of Toledo, 103 Fed. 746. The complainant then filed a petition setting out frankly its purpose of installing a district telegraph system in the city of Toledo in connection with its business as now conducted, and stating for that purpose it had purchased the boxes with the National District Telegraph Company's name and advertisement imprinted upon them, and intended to connect the

boxes already placed and others to be placed in complainant's office by the wires and construction which the defendant threatened to destroy; that the defendant had, since an order for a preliminary injunction had been denied, and the temporary restraining order set aside, cut the wires belonging to the complainant, and it again asked for a preliminary injunction against the defendant. After a hearing, an order was made reciting that the complainant proposed to establish and operate a local district telegraph system in the city of Toledo, through its own wires and apparatus, and restraining the defendant, until the further order of the court, from obstructing the complainant in installing the system on its poles and through its conduits, and from interfering with the complainant in carrying on and conducting a district telegraph system within the city of Toledo. From that order the defendant has appealed to this court.

C. K. Friedman, for appellant.

H. D. Estabrook and John W. Warrington, for appellee.

Before LURTON and SEVERENS, Circuit Judges, and WANTY, District Judge.

WANTY, District Judge, after making the foregoing statement, delivered the opinion of the court.

We assume for the purposes of this appeal that the complainant was rightfully occupying the streets, alleys, and conduits in the city of Toledo for the conduct of its ordinary and usual business. We also assume that the defendant had no intention of interfering with the complainant in such use, and that the resolution of the common council was directed against the installation of the district telegraph plant which was being put in, "whether," in the words of the resolution, "it belonged to the National District Telegraph Company or any other individual, company, or corporation, without having first complied with the laws, ordinances, and regulations governing this class of work in the city of Toledo." The broad claim is made by the complainant that by accepting the terms of the act of congress of 1866 it became an agency of the federal government, and as such has the right to occupy with its wires and poles the post roads of the United States, which include the streets and alleys of the city of Toledo, subject only to the limitation of not interfering with ordinary travel; that, as it was not necessary originally to obtain the consent of the municipality to occupy its streets, it is under no obligation to obtain permits to put in new construction and do the work under the direction of the city civil engineer and superintendent of fire-alarm telegraph. We think, however, in the use of these streets and alleys, although it had accepted the terms of the statute of 1866, the complainant was subject to the control of the municipality, and could not, in defiance of its reasonable regulations, erect poles and stretch wires without let or hindrance. It is necessary for its fire protection, and a proper knowledge of the obstructions in its streets, and the use to which its public places are being subjected, for the city to know, before any construction is put in, what is contemplated, and to have the work done under the supervision of its officers; and the complainant is no more exempt from such restrictions than any other corporation rightfully occupying the streets and alleys of the city. The complainant recognized its obligation to obtain permits

in all of its conduit work and in its outside construction until the municipal authorities attempted to prevent the installation of a dis-- trict telegraph plant, and it then for the first time claimed that it was an agency of the federal government, and was subject to no such restrictions. We think in taking that position it was mistaken, as there was no intention on the part of the federal government in permitting the complainant to use its post roads to dispossess the state and municipalities of the control of them, but the permission was given like any other franchise granted to a corporation, to be exercised in subordination to both public and private rights.

The claim that the acceptance of the terms of the act of congress of 1866 made the complainant an agency of the federal government, and exempt from state and municipal control, has been made by the complainant whenever state or municipal authorities have tried to subject it to the same burdens borne by other corporations doing business within the state or municipality, but without avail. When the state of Massachusetts passed an act taxing the Western Union Telegraph Company on account of the property owned and used by it within that state, it set up its acceptance of the terms of the act of 1866 making it an agency of the federal government, and claimed that it was, therefore, exempt from such taxation; that to tax it was equivalent to taxing a government bank, or any other government agency, and therefore beyond the power of the state. But it was held that the act of 1866 was only a permissive statute, and nothing in it implied an exemption from the ordinary burdens of taxation. W. U. Tel. Co. v. Massachusetts, 125 U. S. 530, 8 Sup. Ct. 961, 31 L. Ed. 790. When the city of St. Louis, in the state of Missouri, imposed an annual charge for each pole erected in its streets by the complainant, the same claim was again made. In announcing the judgment of the supreme court of the United States, Justice Brewer used the following language, which is not inappropriate here, in view of the claim made in this case:

"It is a misconception, however, to suppose that the franchise or privilege granted by the act of 1866 carries with it the unrestricted right to appropriate the public property of a state. It is, like any other franchise, to be exercised in subordination to public as to private rights. While a grant from one government may supersede and abridge franchises and rights held at the will of its grantor, it cannot abridge any property rights of a public character created by the authority of another sovereignty. No one would suppose that a franchise from the federal government to a corporation, state or national, to construct interstate roads or lines of travel, transportation, or communication, would authorize it to enter upon the private property of an individual, and appropriate it without compensation. No matter how broad and comprehensive might be the terms in which the franchise was granted, it would be confessedly subordinate to the right of the individual not to be deprived of his property without just compensation. And the principle is the same when, under the grant of a franchise from the national government, a corporation assumes to enter upon property of a public nature belonging to a state. It would not be claimed, for instance, that under a franchise from congress to construct and operate an interstate railroad the grantee thereof could enter upon the state-house grounds of the state, and construct its depot there, without paying the value of the property thus appropriated. Although the state-house grounds be property devoted to public uses, it is property devoted to the public uses of the state, and property whose ownership and con-

trol are in the state;· and it is not within the competency of the national government to dispossess the state of such control and use, or appropriate the same to its own. benefit, or the benefit of any of its corporations or grantees, without suitable' compensation to the state. This rule extends to streets and highways. They are the public property of the state. While for purposes of travel and common use they are open to the citizens of every state alike, and no state can, by its legislation, deprive the citizens of another state of such common use, yet when an appropriation of any part of this public property to an exclusive use is sought, whether by a citizen or corporation of the same or another state, or a corporation of the national government, it is within the competency of the state, representing the sovereignty of that local public, to exact for its benefit compensation for this exclusive appropriation. It matters not for what that exclusive appropriation is taken, whether for steam railroads or street railroads, telegraphs or telephones, the state may, if it chooses, exact from the party or corporation given such exclusive use pecuniary compensation to the general public for being deprived of the common use of the portion thus appropriated." City of St. Louis v. W. U. Tel. Co., 148 U. S. 100–102, 13 Sup. Ct. 488, 489, 37 L. Ed. 384.

We think the complainant should have made the usual applications for permits to string its wires, stating exactly what was required, in accordance with the regulations of the city, with which it had been accustomed to comply, and it had no right to construct its work in defiance of those requirements.

We are also of the opinion that the Western Union Telegraph Company had no right, under the privileges granted to it by the act of 1866, to install a district telegraph system in the city of Toledo, as that act only extended its privileges to the business of telegraph companies. A district telegraph business, as disclosed by this record, consists in securing the attendance of messenger boys to carry telegraph messages, run miscellaneous errands, carry packages, distribute posters, invoices, invitations, etc. The business also includes night watchman signals, fire and burglar alarms, and police calls. If the act of 1866 is construed to embrace a company formed for such service because it uses wires and appliances in use by a telegraph company, then it would not have been necessary for the proposed National District Telegraph Company to ask permission of complainant to install its proposed plant on its poles and in its conduits, because, by accepting the terms of the act of congress, it would itself have been entitled to all the privileges that the complainant derives from that act. It was conceded on the argument that such a corporation would not be entitled to the privileges conferred by the act, but complainant insists that the installation of the call boxes is necessary for gathering messages to be transmitted in order to meet modern competition, and that they are a necessary incident to its business, and therefore come within the privileges granted to it. It is claimed that the test is, are the boxes and wires put in for telegraphing? If they are, no matter in what business they are used, they come within the privileges granted. If this contention is correct, the complainant may, with the consent of the owner, run its wire into every store, shop, office, manufactory, and residence in the city. Instead of the limited number of wires used for the business of interstate commerce, the number would be limitless. Instead of the complainant being limited to transmitting

messages by telegraph, it could become engaged in every known business. We do not assent to this view. We think the business of a district telegraph company does not come within the privileges granted by the act, and it cannot, as an incident in procuring messages to be sent, be privileged more than a telephone service, for the same purpose, to which it has been held by the supreme court the act has no application. City of Richmond v. Southern Bell Telephone & Telegraph Co., 174 U. S. 761, 19 Sup. Ct. 778, 43 L. Ed. 1162. It follows that the order for a preliminary injunction was improvidently made, and must be reversed.