THE PEOPLE OF THE STATE OF NEW YORK ex rel. POSTAL TELEGRAPH-CABLE COMPANY, Appellant, *v.* STATE BOARD OF TAX COMMISSIONERS, Respondent, CITY OF NEW YORK, Intervenor, Respondent.

**Tax — special franchises, Federal and state — a telegraph company may have special rights or franchises under the Post Roads Act and also special franchises under grants by the state — the Federal franchises are not subject to taxation, but in the absence of a finding or evidence that the Federal franchises are included in an assessment, it will be held valid as an assessment of special franchises granted by the state.**

Relator was assessed upon special franchises possessed and enjoyed by it in the city of New York. It is conceded on this appeal that it possessed franchises of this character which had been granted to it by the state. But in addition it claimed that it was in the enjoyment of rights in the nature of special franchises derived from the Federal government under the Post Roads Act, so called (U. S. Statutes 1866, chapter 230; 1884, chapter 9), and that these rights, although not properly taxable by the state, were nevertheless included

in the assessments complained of, thereby rendering the latter wholly invalid because impossible to separate and eliminate this illegal element. There is no finding that the assessments complained of include the rights secured from the Federal government under the Post Roads Act and the claim that they do thus include them is based upon the general language of the statutes directing the assessment of special franchises and upon the presumption that the assessors complied with the law. *Held:*

1. That the relator having accepted the provisions of the United States statute of 1866 and for years thereafter having occupied streets constituting post roads, presumably not as a trespasser but under some consent by the proper authorities thereto, had obtained rights in the nature of a special franchise which were not subject to assessment and taxation by the state.

2. But that, under the general language of the statutes relating to the assessment of special franchises which do not specifically direct or include the assessment of special franchises granted by the Federal government, it must be assumed that the legislature intended only to reach subjects of taxation which were within its jurisdiction and power and did not intend to include subjects which it knew were absolutely beyond its reach and jurisdiction; and, hence, the statutes should not be construed as directing the assessment of Federal franchises and it must be assumed that the assessors have complied with such statutes and have not included the same.

*People ex rel. Postal Telegraph-Cable Co.* v. *Tax Comrs.*, 181 App. Div. 777, affirmed.

(Argued May 31, 1918; decided July 12, 1918.)

Appeal from an order of the Appellate Division of the Supreme Court in the first judicial department, entered March 21, 1918, which reversed an order of Special Term, in so far as it reduced an assessment for purpose of taxation of special franchises of the relator in the borough of Manhattan, dismissed a writ of certiorari and confirmed said assessments.

*D-Cady Herrick, William W. Cook, Henry G. Fritsche* and *George H. Mallory* for appellant. The reversal by the Appellate Division and the conclusion of law made by the said Appellate Division were both erroneous.

(*S. P. R. R. Co.* v. *United States*, 183 U. S. 519; *California* v. *P. R. R. Co.*, 127 U. S. 1; *C. P. R. R. Co.* v. *California*, 162 U. S. 91; *Essex* v. *C. E. Tel. Co.*, 239 U. S. 313; *W. U. Tel. Co.* v. *Massachusetts*, 125 U. S. 530; *Town of Essex* v. *N. E. Tel. Co.*, 239 U. S. 313.) The conclusion of law found by the Appellate Division, that the permission given by the Post Roads Act " gave the relator no property rights in the streets," seems to be founded upon a misapprehension of the decisions of the United States Supreme Court and of the property rights of the city in city streets. (*Pensacola Tel. Co.* v. *W. Tel. Co.*, 96 U. S. 1; *People* v. *Kerr*, 27 N. Y 188; *Kellinger* v. *F. S. Street R. R. Co.*, 50 N. Y. 206; *People ex rel. M. S. Ry. Co.* v. *Tax Comrs.*, 174 N. Y. 417; *People ex rel. Palmer* v. *Travis*, 223 N. Y. 150; *Owensboro* v. *Cumberland Tel. Co.*, 230 U. S. 58.) The authority granted by the Post Roads Act to occupy the post roads of the country, when accepted by the telegraph company created a franchise constituting a property right. (*California* v. *P. R. R. Co.*, 127 U. S. 1; *Southampton* v. *Jessup*, 162 N. Y. 122; *People ex rel. M. S. Ry. Co.* v. *Tax Comrs.*, 174 N. Y. 417; *Pensacola Case*, 96 U. S. 1; *Tel. Co.* v. *Texas*, 105 U. S. 400; *St. Louis* v. *Western Union Tel. Co.*, 63 Fed. Rep. 73; *Louisville* v. *Cumberland Tel. Co.*, 224 U. S. 649; *N. Y. El. Lines Co.* v. *E. C. Subway Co.*, 235 U. S. 179; *Ghee* v. *N. U. Gas Co.*, 158 N. Y. 510; *F. C. Co.* v. *State*, 221 N. Y. 295.) Assuming that the privilege enjoyed by the relator, appellant, of occupying the roads, streets and highways of the state for telegraphic purposes is separable, partly coming from the state, and partly from the Federal government, and granting that the state has the right to assess and tax the franchise granted by its statute, still the intangible right of occupying such roads, streets and highways has been assessed and taxed as a unit, and the value of the state franchise is not separated nor can it be severable from that enjoyed

under the Federal franchise, and the whole assessment is, therefore, void. (*Williams* v.* *Falladega*, 226 U. S. 419; *Gillespie* v. *Zittlosen*, 60 N. Y. 449; *Mushlitt* v. *Silverman*, 50 N. Y. 360; *Santa Clara Co.* v. *Pac. R. R. Co.*, 118 U. S. 394; *California* v. *Pac. R. R.* '*Co.*, 127 U. S. 1; *People ex rel.* v. *Tax Comrs.*, 202 N. Y. 426; Greenl. on Ev. § 79; Taylor on Ev. § 376; Best on Ev. § 274; *Harris* v. *White*, 81 N. Y. 532; *Ramsay* v. *Hayes*, 112 App. Div. 442; *Selma R. R. Co.* v. *United States*, 139 U. S. 550; *Ryan* v. *Franklin*, 199 N. Y. 347.)

*Merton E. Lewis*, Attorney-General (*Martin Saxe* and *Charles R. McSparren* of counsel), for State Board of Tax Commissioners, respondent. *William P. Burr*, Corporation Counsel (*William H. King* and *Addison B. Scoville* of counsel), for city of New York, respondent. The Appellate Division was right in holding herein that the United States did not by the Post Roads Act vest in the relator a special franchise, to construct, maintain or operate its telegraphic properties in the streets, highways, public places and public waters in the city of New York, and in holding that such special franchise was granted to the relator by the state of New York. (*People ex rel. M. S. Ry. Co.* v. *Tax Comrs.*, 174 N. Y. 417; *People ex rel. H. R. & P. R. R. Co.* v. *Tax Comrs.*, 215 N. Y. 507; *Ghee* v. *N. U. Gas Co.*, 158 N. Y. 510; *People* v. *O'Brien*, 111 N. Y. 1; *W. U. Tel. Co.* v. *P. R. R. Co.*, 195 U. S. 540; *W. U. Tel. Co.* v. *Richmond*, 224 U. S. 160; *Essex* v. *N. E. Tel. Co.*, 239 U. S. 313; *St. Louis* v. *W. U. Tel. Co.*, 148 U. S. 92; *A. & P. Tel. Co.* v. *Philadelphia*, 190 U. S. 160; *California* v. *C. P. R. R. Co.*, 127 U. S. 1.) The most that can be claimed under the Post Roads Act is that it vested in a telegraph company the right to exercise its general franchise powers in states other than that of its incorporation, and so prevented a

state from excluding a telegraph company therefrom because it was a foreign corporation or because the state wished to erect a monopoly of its own; hence the act does not apply to relator's special franchise rights in the streets and highways of this state which is the state of relator's incorporation. (*Pensacola Tel. Co.* v. *Western Union Tel. Co.*, 96 U. S. 1; *W. U. Tel. Co.* v. *Richmond*, 224 U. S. 160; *W. U. Tel. Co.* v. *Penn. R. R. Co.*, 195 U. S. 540; *W. U. Tel. Co.* v. *Massachusetts*, 125 U. S. 530; *People ex rel. N. Y. C. R. R. Co.* v. *Woodbury*, 203 N. Y. 167.)   Even assuming that the Post Roads Act did vest in relator some kind of a right in addition to the special franchise granted by this state, the taxing by the state of the property of the relator within the state does not defeat the purpose of the Post Roads Act; hence, the state had the right to impose special franchise taxes against relator's property. (*Williams* v. *Talladega*, 226 U. S. 404; *W. U. Tel. Co.* v. *Massachusetts*, 125 U. S. 530; *Kronsbein* v. *Rochester*, 76 App. Div. 494; *Levy* v, *McClellan*, 196 N. Y. 178; *Owensboro* v. *C. T. & T. Co.*, 230 U. S. 58; *People ex rel. H. & M. R. R. Co.* v. *Tax Comrs.*, 203 N. Y. 119; *Western Union Telegraph Co.* v. *Hurlburt*, 83 Ore. 633; *Western Union Telegraph Co.* v. *Hopkins*, 160 Cal. 106; *Western Union Telegraph Co.* v. *Los Angeles County*, 160 Cal. 124; *Postal Telegraph Cable Co.* v. *City of Los Angeles*, 128 Pac. Rep. 19.)   A state has the right to require a telegraph company to pay for the privilege of permanently occupying a public street with its wires and appurtenances even though it has accepted the Post Roads Act; hence, this state may impose a special franchise tax which has certain characteristics of a charge for such privilege. (*St. Louis* v. *Western Union Telegraph Co.*, 148 U. S. 92; *W. U. Tel. Co.* v. *Richmond*, 224 U. S. 160; *N. Y. Rys. Co.* v. *City of New York*, 218 N. Y. 483.)   The special franchise tax herein is not a tax on an agency of the Federal gov-

ernment, nor will its enforcement take away relator's right to do business in this state. (*R. R. Co.* v. *Peniston,* 18 Wall. 5; *W. U. Tel. Co.* v. *Massachusetts,* 125 U. S. 530.) Even if it could be established that the Post Roads Act vested in relator some kind of right which the state of New York has no power to tax, the relator has not shown that the state board of tax commissioners, in fixing the assessments under review herein, included such right in its valuation of relator's special franchise granted by the state of New York, and hence it has not shown any illegality in the assessments under review. (*People ex rel. J. W. S. Co.* v. *State Board,* 196 N. Y. 39; *People ex rel. M. S. Ry. Co.* v. *Tax Comrs.,* 174 N. Y. 417; *People ex rel. Sinkler* v. *Terry,* 108 N. Y. 1; *Sweet* v. *City of Syracuse,* 129 N. Y. 316; *Purdy* v. *Erie R. R. Co.,* 162 N. Y. 42; *People ex rel. Simpson* v. *Wells,* 181 N. Y. 252; *People ex rel. State Water Com.* v. *Curtis,* 192 N. Y. 319; *California* v. *C. P. R. R. Co.,* 127 U. S. 1; *Western Union Tel. Co.* v. *Los Angeles County,* 160 Cal. 124; *Postal-Telegraph Cable Co.* v. *Los Angeles County,* 160 Cal. 129; *Postal Telegraph-Cable Co.* v. *City of Los Angeles,* 128 Pac. Rep. 19.) Even if it could be established that the Post Roads Act vested in relator some kind of a Federal right and that the state board of tax commissioners erroneously included such right in its valuation, the relator would not be entitled to a reduction of the assessments because of that fact, in the absence of proof that the assessments represent in fact an overvaluation of the special franchise granted by the state to the relator. (*People ex rel. N., F. H. P. & M. Co.* v. *State Board,* 202 N. Y. 426.)

HISCOCK, Ch. J. For the year 1912 the relator was assessed in a very substantial sum upon its special franchises to construct and operate telegraph lines in and through the streets in the city of New York. By

these proceedings in certiorari it sought to review and for various reasons to avoid such assessments except so far as they covered tangible property. Of these reasons only one now survives in part for our consideration and that is the one, as originally stated, that whatever rights in the nature of special franchises relator enjoyed to occupy and use the streets for its telegraph lines were derived from the Federal government under and by virtue of the Post Roads Act, so called (U. S. Statutes, 1866, chapter 230; U. S. Statutes, 1884, chapter 9), and that these rights are not taxable by the state. This original claim has been modified on this appeal to the one that relator possessed some rights in the nature of special franchises secured under said act which were included in the assessments complained of and that the latter are invalid, because even though they properly included special franchises derived from the state and taxable, they are single and entire and there is no manner in which the illegal element can be eliminated.

On the proceedings at the Special Term under the writ sued out by relator it appeared that it was incorporated in August, 1883, under the name " New England Telegraph Company " (subsequently amended to the present name) under chapter 265 of the Laws of 1848 known as " An Act to provide for the incorporation and regulation of telegraph companies," and which act provided that a corporation thus organized " is authorized to construct lines of telegraph along and upon any of the public roads and highways, or across any of the waters within the limits of this State, by the erection of the necessary fixtures; " also that in 1884 the relator filed its acceptance of the privileges of the Post Roads Act, which act provided as follows:   " Any telegraph company now organized, or which may hereafter be organized, under the laws of any State, shall have the right to construct, maintain, and operate lines of telegraph through and over

any portion of the public domain of the United States, over and along any of the military or post roads of the United States which have been or may hereafter be declared such by law, and over, under, or across the navigable streams or waters of the United States; but such lines of telegraph shall be so constructed and maintained as not to obstruct the navigation of such streams and waters, or interfere with the ordinary travel on such military or post roads;" and "Before any telegraph company shall exercise any of the powers or privileges conferred by law such company shall file their written acceptance with the Postmaster-General of the restrictions and obligations required by law." In 1884 Congress enacted as follows: "All public roads and highways while kept up and maintained as such are hereby declared to be post routes." It was not found and it does not appear when relator's lines were actually constructed and it does not appear, unless it be by inference from the language of the assessing statute, that the assessments complained of include the rights in the nature of a special franchise, if any, secured from the Federal government under the Post Roads Act.

The Special Term held as conclusions of law in substance that the relator possessed and enjoyed a special franchise granted to it by the state under the act already referred to and also one secured by it under the Post Roads Act; that the former was taxable by the state and the latter not and, in part by inference, that the assessments complained of were of both franchises and, therefore, illegal. The Appellate Division in effect held that the relator received and enjoyed from the Federal government no right in the nature of a special franchise to occupy the streets of the city of New York which was or could be included in said assessments and the latter were accordingly valid and it expressly reversed the conclusions of law made by the Special Term in opposition to

these views and substituted new ones in accordance
therewith.

The determination of the query which of these two
views is correct involves the consideration of two con-
troverted questions.

As introductory to their consideration it may be
stated that whatever its Federal rights were there is no
dispute that the relator at the time the assessments in
question were made was in the enjoyment by grant from
the state of rights now defined as a special franchise
which were subject to assessment.   It has been assumed
in the argument before us that the state held title to or
control over the streets through which relator's lines
were constructed.   By the statutes in existence at the
time of its incorporation relator was given the right to
construct and operate its lines through said streets and
thereby to enjoy exclusive occupation of portions thereof
and by the acceptance of the privileges thus conferred
there were created rights now known and described as
special franchises.   (*People ex rel. Met. St. R'way Co.* v.
*State Board of Tax Commrs.*, 174 N. Y. 417; *People ex
rel. Harlem River & P. C. R. R. Co.* v. *State Board of
Tax Commrs.*, 215 N. Y. 507, 511; *City of Owensboro*
v. *Cumberland Tel. & Tel. Co.*, 230 U. S. 58.)   Even
if there were any doubt about this we should be con-
trolled by the conclusions of the Special Term.   It was
held by that court in reaching its order, from which no
appeal was taken by relator, that the latter had obtained
and at the time of the assessments was in possession and
enjoyment of these franchises from the state, and these
conclusions were not disturbed by the Appellate Division.

It seems to be suggested in the opinion of the latter
court that such special franchises were superseded or
annulled by the Federal franchises if granted.   We do
not, however, find any such contention advanced in the
elaborate and careful briefs of the appellant and we are

176 People ex rel. Postal T.-C. Co. *v.* Tax Comrs.

[224 N. Y.]      Opinion, per Hiscock, Ch. J.      [July,

compelled to differ from this view. The franchises granted by the state would seem to be prior in point of time and as will appear by subsequent discussion they were not identical with, but broader than, those if any granted by Congress. Under such circumstances it seems to be settled that Congress may grant to a corporation created by the state additional or supplementary franchises, at least of a similar nature, and that the two may coexist. (*So. Pac. R. R. Co.* v. *U. S.*, 183 U. S. 519, 527; *Cent. Pac. R. R. Co.* v. *California*, 162 U. S. 91, 127.) That these two kinds of special franchises may coexist was held in *Western Union Telegraph Company* v. *Hopkins* (160 Cal. 106) and *Western Union Telegraph Company* v. *County of Los Angeles* (160 Cal. 124). The existence of these special franchises obtained from the state and taxable at the time of the assessments will, therefore, be assumed without further discussion and we shall proceed to a consideration of the questions which do precipitate a controversy.

The first of these is the one whether the relator at the time of the assessments had secured rights in the nature of a special franchise from the Federal government under the Post Road Act, which could have been included, although improperly, in the assessments. I am inclined to think that it had.

The definitions by the Supreme Court of the United States in many cases of the rights secured by such a corporation as relator under said Federal act, are somewhat general and not especially helpful in the present discussion. It is said that the application of this statute is not limited to such post roads as are upon the public domain (*Pensacola Tel. Co.* v. *W. U. Tel. Co.*, 96 U. S. 1); that it confers upon all telegraph companies alike which comply with its provisions the right to operate telegraph lines and prevents state legislation interfering therewith or to establish a monopoly (*Pensa-*

*cola Tel. Co.* v. *W. U. Tel. Co.*, 96 U. S. 1); that a state may not by specific statute prevent a corporation from placing its lines along post roads or stop the use of them after placed there (*W. U. Tel. Co.* v. *Massachusetts*, 125 U. S. 530, 548); that the statute, except in a negative sense, is only permissive and not a source of positive rights (*St. Louis* v. *W. U. Tel. Co.*, 148 U. S. 92, 101), and in its last discussion of the question the learned court declined to consider " What rights — if any — in respect of them (streets and highways) were *immediately* secured by the Telegraph Company through acceptance of that Act (of 1866)." (*Town of Essex* v. *New England Tel. Co.*, 239 U. S. 313, 321.)

There are, however, other decisions which taken together seem with more definiteness to indicate what the rights of this appellant are under said act in view of its existing and long-continued occupation of the streets. The act is permissive and the privilege granted by it does not carry the " unrestricted right to appropriate the public property of a state. It is like any other franchise, to be exercised in subordination to public as to private rights," and where a telegraph company seeks to appropriate parts of streets or highways to an exclusive use under the terms of the act " it is within the competency of the state, representing the sovereignty of that local public, to exact for its benefit compensation for this exclusive occupation." The act gives " no right to use the soil of the streets, even though post roads, as against private owners or as against the city or State where it owns the land." (*St. Louis* v. *W. U. Tel. Co.*, 148 U. S. 92, 100, 101; *W. U. Tel. Co.* v. *Massachusetts*, 125 U. S. 530, 548; *W. U. Tel. Co.* v. *Penn. R. R. Co.*, 195 U. S. 540; *W. U. Tel. Co.* v. *City of Richmond*, 224 U. S. 160, 169.)

The only limitation upon the power of a state or municipality to impose conditions upon the right of

178 People ex rel. Postal T.-C. Co. *v.* Tax Comrs.

[224 N. Y.]        Opinion, per Hiscock, Ch. J.        [July,

a telegraph company to occupy streets of which it has the title or control is that they shall not be arbitrary or unreasonable. (*Town of Essex* v. *New England Tel. Co.*, 239 U. S. 313, 320; *W. U. Tel. Co.* v. *City of Richmond*, 224 U. S. 160, 170.)

The sum and substance of these decisions would seem to be that a telegraph company like relator which had accepted the provisions of the act of 1866 and for years thereafter had occupied streets constituting post roads, presumably not as a trespasser, but under some consent by the proper authorities thereto, had obtained rights in the nature of a special franchise. I think this view is confirmed by three decisions which are especially applicable.

In *Western Union Telegraph Company* v. *Penn. R. R. Company* (195 U. S. 540, 566) the court speaks of the rights obtained under the act of 1866 as a "franchise," saying "that the franchise or privilege granted by the act of 1866 could only be exercised in subordination to public as well as private rights, and, as entry upon the latter could only be made upon the payment of just compensation, entry upon the former was subject to the same payment."

In *Town of Essex* v. *New England Telegraph Company of Mass.* (239 U. S. 313, 322) it appeared that the defendant had accepted the benefits of the act of 1866. There was also a state statute permitting such a company to construct and operate lines along highways and public roads under regulation imposed by local authorities. For many years the defendant had operated its lines over and through the highways of the plaintiff. It had applied to the proper authorities for permission to do this, but it did not appear that such consent had been specifically granted, but only that there had been no objection to such occupation. Under these circumstances the court, after referring to the undoubted fact that the highways were post roads under the act of 1866 and that the

defendant's occupation thereof had been notorious and peaceful for many years, said: " The statute (of 1866) must be construed and applied in recognition of existing conditions and with a view to effectuate the purposes for which it was enacted * * *. In the circumstances, appellee has acquired the same Federal right to maintain and operate its poles and wires along the ways in question that would have attached had the selectmen granted a formal antecedent permit," and the attempt by the plaintiff to exclude the defendant from occupation and use of the highways was for the reasons stated enjoined, but subject to reasonable regulations of the location and operation of the lines.

In *Western Union Telegraph Company* v. *Hopkins* (160 Cal. 106) it was held on facts substantially identical with those here presented that under the Federal statute the company obtained a special franchise in the streets of Los Angeles.

Holding as we do that relator was in enjoyment of a special franchise to occupy the streets, granted by the state which had broader powers than Congress, it may be that the act of 1866 would not confer rights of any great value. That, however, is beside the question now under consideration. (*W. U. Tel. Co.* v. *Penn. R. R. Co.*, 195 U. S. 540.)

If the relator at the time the assessments were made was the owner and in enjoyment of a special franchise granted by the Federal government such franchise was not subject to assessment and taxable by the state. While its right under the Federal statute to enter upon exclusive occupation of streets and highways was subject to reasonable regulation and it was subject to certain forms of taxation, it seems quite clear that such form of rights as we are discussing were immune from state taxation, and inasmuch as this is the view taken by the respondents on the argument of the next question to be

considered it will be assumed to be correct without further discussion.

Thus we come to the second question whether the assessments which are complained of are shown to have been laid upon relator's Federal franchise, assuming that it had one. We do not think that they have been. The presumption is in favor of the validity of an assessment and the burden necessarily rests upon the one who attacks it to show that it is invalid. (*People ex rel. Jamaica Water Supply Co.* v. *State Board of Tax Commrs.*, 196 N. Y. 39, 53; *Chamberlain* v. *City of St. Ignace*, 92 Mich. 332, 335.) As has already been stated there is no finding and no direct evidence indicating that the assessors assessed other than the special franchise derived from the state. The claim that they did otherwise is based upon the wording of the statute pertaining to the taxation of special franchises and upon the presumption that such officers as assessors have complied with the law.

The Tax Law (Cons. Laws, ch. 60), section 2, subdivision 6, in defining special fanchises for purposes of taxation requires the inclusion of the value of " *all* franchises, rights, or permission to construct, maintain or operate." The Tax Law further provides (Sec. 43) that the state board of tax commissioners shall annually fix and determine the valuation of " *each* special franchise subject to assessment in each city, town or tax district." The notice served by the assessors upon relator, as already stated, contained the statement that the tax commissioners had made valuation " of the special franchises constructed, maintained or operated " by relator.

From these provisions it is argued that the tax commissioners were required to and it must be assumed did assess every right in the nature of a special franchise possessed and enjoyed by the relator from whatsoever source derived and that no other construction is per-

missible. Of course we agree with the argument of the learned counsel for the relator that if this statute is perfectly definite and explicit in requiring the assessment of any Federal franchise enjoyed by the relator, we should not attempt to escape from that result by any process of interpretation, and also, that if such franchise has been included in the assessment complained of, the assessment of it and of the state franchise is so blended that the whole assessment must fall. We do not think, however, that we are required or even permitted to apply to the statute in question the meaning and force urged in behalf of the appellant.

The purpose of the statute taxing special franchises was to impose upon a vast amount of privileges within the state in the nature of property rights a just proportion of the burdens of taxation, which such rights had theretofore escaped. We know as a matter of general knowledge that the great proportion of the rights thus to be taxed were derived by grant from the state or from municipalities to which the state had delegated its powers. Franchises of the kind aimed at which were derived from any Federal grants were infrequent and of minor consequence. It is fair to assume that the legislature had in mind the former and important class rather than the latter and inconsequential one. In fact this court has once thus interpreted its action when, referring to the legislature, it said: " It found property scattered all over the state worth nearly two hundred millions of dollars, which was not taxed at all and had never been taxed. This property consisted wholly of special franchises, or privileges given by the *state,* mainly to corporations furnishing to the public transportation, water, light and other necessities or conveniences of daily life." (*People ex rel. Met. St. Ry. Co.* v. *State Board of Tax Commrs.,* 174 N. Y. 417, 437.)

But further than this, on appellant's theory of the

law, at the time this legislation was adopted it had long
been settled, and as we must assume with the knowledge
of the legislature, that such rights as now constitute a
special franchise granted by the Federal government were
not subject to taxation by the state. (*California* v.
*Cent. Pac. R. R. Co.*, 127 U. S. 1.)   The rule is that where
general language is used in a statute which is susceptible
of two constructions, the court is bound to give that con-
struction which makes the statute constitutional and valid.
Legislatures are not to be convicted, if such result can be
escaped, of doing vain things and passing invalid statutes.
We think that abundant authority requires us to apply
that rule to the statute before us and to hold that the legis-
lature by its general language, which did not specifically
include the assessment of Federal franchises, intended
to reach subjects of taxation which were within its juris-
diction and power and did not mean or attempt to include
subjects which it knew were absolutely beyond its reach
and jurisdiction. (*People ex rel. Sinkler* v. *Terry*, 108
N. Y. 1, 7; *Beardsley* v. *N. Y., L. E. & W. R. R. Co.*,
15 App. Div. 251; *Purdy* v. *Erie R. R. Co.*, 162 N. Y.
42; *W. U. Tel. Co.* v. *Hurlburt*, [Sup. Ct. of Oregon] 163
Pac. Rep. 1170; *W. U. Tel. Co.* v. *County of Los Angeles*,
160 Cal. 124; *People* v. *Cent. Pac. R. R. Co.*, 105
Cal. 576.)

In the case first cited the court had before it for
consideration a provision in the charter of the village of
Canton providing for the election of a justice of the peace
and investing him with " the usual powers of justices
of the peace of towns."   Canton constituted only a part
of the town in which it was located.   It was settled at
the time this legislation was adopted that inferior local
courts could be established in villages, but that a justice
of the peace exercising the powers of a justice throughout
the entire town could not constitutionally be selected
by the electors of a village constituting only part of the

town.   The court in construing the act in question
referred to the rule already quoted, that where a statute
is susceptible of two constructions one of which will
render the act valid and the other void, courts will adopt
that construction which renders the act valid rather than
the one which avoids it.   It likewise assumed that the
legislature was to be charged with knowledge of the law
above quoted referring to the selection of justices of the
peace, and could not have intended to pass an uncon-
stitutional act and provide for the creation of an officer
with jurisdiction prohibited by the Constitution.   Apply-
ing these rules it held that the statute while in general
terms vesting a justice of the peace selected by the village
of Canton with the usual powers of justices of the peace
of towns, was nevertheless to be construed as conferring
upon such justice jurisdiction only within the village.

In the *Purdy* case the court had before it for con-
struction chapter 1027 of the Laws of 1895 pertaining
to the issue of mileage books by railroad corporations.
That statute in general terms provided that " *every* rail-
road  corporation  operating  a  railroad  in  this  state,
*   *   *   and which is authorized by law to charge a
maximum fare of more than two cents per mile and
not more than three cents per mile, shall issue mileage
books " entitling the holder to a reduced rate of fare.
The legislature had the right to pass such an act dealing
with fares for intrastate transportation but not for
interstate transportation and it was claimed in behalf
of the railroad company that the statute by its broad
and general language sought to affect and regulate both
classes of transportation and, therefore, was invalid.   It
was, however, said in overruling this contention: " There
is nothing in the language of the statutes now before
us that shows they were intended to affect any but
intrastate transportation; but if their interpretation be
doubtful ' the courts must so construe a statute as to

bring it within the constitutional limits, if it is susceptible
of such construction.'  *  *  *.  Within this principle
these statutes must be construed as applying to trans-
portation wholly within the state."  (P. 51.)  In reaching
this conclusion the court referred with approval to what
had been said by the Appellate Division in a similar
case in *Beardsley* v. *N. Y., L. E. & W. R. R. Co. (supra)*.
In that case it was written, referring to the act in question:
" The act in question is a general one.  It does not,
*in terms*, interfere with the carriage of passengers outside
of the state.  It may be construed as intending to refer
only to such railroads as operate within this state a
line or lines more than one hundred miles in length,
and to limit to such lines the use of the mileage books
therein provided for.  It may be construed to apply
solely to commerce within the state and, therefore, no
violation of the Federal Constitution.  *  *  *  It
should, we think, be so construed."  (P. 256.)

The case of *Western Union Telegraph Company* v.
*County of Los Angeles (supra)*, in a well-considered opinion
dealing with facts substantially identical with those
before us, upholds the precise view here being adopted.
In that case it appeared that the telegraph company
under state authority had a right in the nature of a
franchise in the streets of the city of Los Angeles and
also that it had certain rights in such streets " by virtue
of its Federal franchise acquired under the Act of July
24, 1866," the former being assessable by the state or
city officers and the latter not.  The assessment against
the company was described as the " Right to occupy
the streets of the City of Los Angeles."  There was no
other evidence indicating which franchise or class of
rights had been assessed.  Under these circumstances it
was held that it was not to be assumed that the assessors
had included in their assessment with rights granted by
the state, which could be properly assessed, other property

which they had no right or power to assess and the assessment was upheld.

We do not regard the cases urged upon our attention by counsel for the appellant as in any degree overruling the views which we are adopting or as impairing the force of either of the cases which we have cited.

In *California* v. *Central Pacific R. R. Co.* (127 U. S. 1, 35) the court held an assessment invalid because there was an express finding by the trial court that the assessment included the full value of *all franchises* and corporate powers held and exercised by the defendant and which necessarily involved the Federal franchise. On the contrary, in a later case (*Central Pac. R. R. Co.* v. *California*, 162 U. S. 91) an assessment of special franchises was sustained because the trial court had found that the assessment was only of the state franchise and did not include the Federal one.

In *Williams* v. *City of Talladega* (226 U. S. 404), especially relied on by the appellant, the plaintiff in error was the agent in the city of Talladega of the Western Union Telegraph Company and it appeared, as here, that the company had accepted the benefits of the Post Roads Act and by doing this had assumed certain duties in respect of the transmission of government messages and that part of the business transacted by its said agent consisted in the transmission of such messages within the state of Alabama. Under these circumstances the city of Talladega adopted a schedule of licenses for various businesses and occupations and among them the following: " Telegraph Company. Each person, firm or corporation commercially engaged in business of sending messages to and from the City to and from points in the State of Alabama for hire or reward... $100." It was held by the United States Supreme Court that a license tax could not be imposed by a state on the transaction of business therein including trans-

mission of government messages by a telegraph company which had accepted the terms of the act of 1866, and of course this decision necessarily involved the conclusion that the ordinance in question did include and did not exempt government messages from the effect of the license and this construction of the ordinance is the reason for the citation of this authority in this case.

If the courts had fully considered the question we do not see how that particular ordinance could well have been construed differently. It imposed a license or a tax upon the business transacted by the telegraph company with one single limitation — that it should be intrastate. With this single limitation the natural meaning of the ordinance was that of a business as an entirety composed of all of the different lines of transactions which entered into and made it up, inseparably blended together. It would be difficult to find either in the surroundings of the ordinance or in the language used any indication of an attempt to exempt from its effect any particular line of transactions so long as they came within the general description of business transacted within the state. As a matter of fact, however, this interpretation was placed upon the ordinance without any consideration whatever by the Supreme Court and with scarcely any by the court of Alabama where the case originated. The former court in answer to the argument made that the ordinance was not intended to include government business simply said in substance that it had been held otherwise by the state court and that, therefore, it would follow the view so entertained. The state court on the other hand held that the ordinance was valid even though it did impose a license fee upon the business of transmitting government messages and, therefore, there was no necessity to consider carefully in that court the question whether it did or did not include such messages.

The reasons which have been set forth lead to the conclusion that the order of the Appellate Division should be affirmed, with costs.

CHASE, HOGAN, POUND, CRANE and ANDREWS, JJ., concur; McLAUGHLIN, J., absent.

Order affirmed.